IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1879.

## North Pennsylvania Railroad Co. *versus* Kirk.

1. Where there is evidence of negligence on the part of defendant, and evidence from which it might be inferred that the plaintiff was guilty of contributory negligence, the evidence on both questions should be submitted to the jury.

2. On the line of defendant's railroad, plaintiff owned a lumber and coal yard, in which his son was employed. A siding ran from the railroad to a warehouse in the plaintiff's yard. A lumber car was left standing on the siding, beyond the period when the rules of the company required them to remove it. It had a defective brake and it was not shown that it had been sufficiently blocked. A number of cars from a freight train were started on to the siding from the main track and striking the lumber car, forced it down towards the warehouse, into which it crashed with great violence. There was evidence also that the nearest of these cars had a defective brake. The son of the plaintiff, hearing the sound of the approaching train, hurried towards the warehouse and entered it, and was found crushed to death against the doors. *Held*, that it was properly left to the jury to determine whether defendants were guilty of negligence, and whether the deceased by his own negligence contributed to the accident.

3. The son was twenty-eight years of age when the accident happened. He had been away from home, at intervals, after he attained his majority and been in business on his own account. He had returned, however, to his father's house and was engaged in his father's business, for which no compensation was paid him. It appeared that he intended to remain with his father, and that his services were valuable to him in his business. *Held*, that it was for the jury to decide whether there was a reasonable expectation of pecuniary advantage accruing to plaintiffs, which was destroyed by the loss of his son.

4. At the close of the plaintiff's evidence, the defendants moved for a nonsuit, unless the court should be of opinion that they would thereby be precluded from offering any evidence, if the motion was overruled. The court expressed the opinion that they would be precluded by such motion made and overruled. To this ruling an exception was taken. *Held*, that the expression of the court on a motion in a form so peculiar, was not such a ruling as entitled the defendants to an exception and a review in this court.

(15)

[North Pennsylvania Railroad Co. *v.* Kirk.]

5. A brakeman of defendant was asked: "Did you omit to do anything you could have done to prevent this accident?" *Held*, that it was competent to prove all the witness had done, but it was for the jury to decide whether by acts done or duties omitted he had been guilty of negligence.

6. For the purpose of showing that the plaintiffs had been indemnified for the loss of their son, the defendants offered to show that they had received $5000, the amount of a policy of insurance on the life of their son. *Held*, that the court properly excluded this evidence.

March 24th 1879.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Montgomery county* : Of January Term 1878, No. 104.

Case by Elias Kirk and Rachel his wife against the North Pennsylvania Railroad Company, to recover damages for the death of their son, which they alleged was caused by the negligent use of a certain railway siding at Abington station, on the line of the defendant's road.

The trial was before Ross, P. J.  The verdict was for plaintiffs for $3050.  The other material facts and the various assignments of error are sufficiently set forth in the opinion of this court.

*G. R. Fox* and *A. D. Swartz*, for plaintiffs in error.—A parent cannot recover for the death of a son who was of age, unless it is established that their family relation continued to exist and that the parents received pecuniary advantage for his services : Pennsylvania Railroad Co. *v.* Zebe, 9 Casey 318 ; Caldwell *v.* Brown, 3 P. F. Smith 453 ; Pennsylvania Railroad Co. *v.* Bantom, 4 Id. 495 ; Railroad Co. *v.* Rowan, 16 Id. 393 ; Birmingham *v.* Dorer, 3 Brew. 69 ; Railroad Co. *v.* Adams, 5 P. F. Smith 499.

The negligence of the deceased contributed to the accident, and the court should have decided this question as a matter of law on the undisputed facts : Railroad Co. *v.* Armstrong, 2 P. F. Smith·282 ; Waters *v.* Wing, 9 Id. 211 ; Gerety *v.* Railroad Co., 31 Id. 274 ; Railroad Co. *v.* Feller, 3 Norris 226.

The motion for the nonsuit should have been granted, and it was error to rule that if the motion was insisted upon and refused, the defendants should be precluded from giving any evidence in defence: Smyth *v.* Craig, 3 W. & S. 14.

The deceased was engaged about the premises of the railroad company, and was an employee, and not entitled to recover : Act April 4th 1868, Pamph. L. 58 ; Kirby *v.* Railroad Co., 26 P. F. Smith 506 ; Mulherrin *v.* Railroad Co., 31 Id. 376.

*H. K. Weand* and *B. E. Chain*, for defendants in error.—The evidence of the existence of the family relation between the deceased and his parents was properly submitted to the jury, as was, also the reasonable expectation they had of pecuniary advantage therefrom : Railroad Co. *v.* Adams, *supra ;* Railroad Co. *v.* Keller, 17 P. F.

[North Pennsylvania Railroad Co. v. Kirk.]

Smith 300: Central Railroad Co. v. McHugo, 35 Leg. Int. 62; Central Railroad Co. v. Barron, 5 Wallace 90.

The court's ruling in regard to the nonsuit was proper: Bevan v. Insurance Co., 9 W. & S. 187; Baker v. Lewis, 9 Casey 301; Howard Express Co. v. Wile, 14 P. F. Smith 201.

The deceased could not have been guilty of contributory negligence in entering a private building, connected with his own business, the doors of which were closed and barred, and into which cars could enter only by his own permission, and by the opening of the doors.

The first section of the act of 1868 does not apply to this case. The deceased was in no sense engaged, at the time of this injury, in or about the road or premises of the defendant company.

Mr. Justice WOODWARD delivered the opinion of the court, May 7th 1879.

This action was brought by Elias Kirk and his wife, the plaintiffs below, to recover damages for the injury they sustained by the death of their son, caused, as they alleged, by the negligence of the servants of the North Pennsylvania Railroad Company. At the trial the court were asked to charge the jury that the evidence did not show such a relation between the deceased and the plaintiffs as to entitle them to recover. It had been shown that the son was twenty-eight years of age when the accident happened. He had been away from home at intervals after he attained his majority, and had been in business on his own account. He had returned, however, to his father's house, and for some months had been rendering services of various kinds in his father's business, for which no compensation was paid him. Elias Kirk testified that when Morris returned from Maryland, he said he would stay and help the witness, and do anything he should be required to do. Mrs. Kirk said the services of Morris "were of great value," and that she "considered his advice of more value than that of any others." In clear and forcible terms that were characteristic of the whole charge, the jury were instructed positively that unless they found that the parental and filial relation was subsisting, and that there was reasonable ground to believe that it would continue to subsist, between the plaintiffs and their deceased son, they could find only nominal damages. There has been no departure from the rule laid down in the Pennsylvania Railroad Co. v. Adams, 5 P. F. Smith 499. The words "parents" and "children" in the Act of the 26th of April 1855, are used to indicate the family relation in point of fact, as the foundation of the right of action, without regard to age. And "if there be a reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence occasioning the death of the party from whom it arose will sustain the action."

9 NORRIS—2

The charge was in every way unobjectionable, and the question was one which it was the province of the jury to determine.

Was there evidence of negligence on the part of the defendants? Elias Kirk had a coal and lumber yard on the line of the railroad. A siding ran from the railroad track to a warehouse on Kirk's land. It was about two hundred and fifty yards in length. The company had built that part of the siding extending from the track to the line of their right of way. The rest of it had been built by Kirk. It was the usage of the company to deliver cars consigned to Kirk upon the siding, and at stated intervals to deposit upon it cars forming part of, and detached from, their own trains. The key of the switch was in the possession of John Quinn, who was in the company's employment at the time of this occurrence. During the afternoon of the 12th of March 1874, a flat lumber car was standing on the siding, about one hundred yards distant from the railroad track, and about one hundred and fifty yards from the warehouse. It had no effective brake, and the mooted question whether it had been sufficiently blocked was left to and found affirmatively by the jury. From the track to the point where the, car stood, the grade of the siding ascended; from that point it descended over and along a series of coal-bins, and from the bins was ascending again towards and until it reached the warehouse. The car with a load of lumber consigned to Mr. Kirk, had been transported from Williamsport and placed on the siding five days. before the accident. About four o'clock three flat and fifteen coal cars were detached from a freight train of the defendants on its way to Philadelphia. The switch was changed, and the cars ran by their own gravity upon the siding at the rate of three or four miles an hour. The flat car standing on the track was struck by the foremost of the approaching cars so as to start it, and force it on the down grade over the coal-bins, and on the up grade to the door of the warehouse, which was shut and barred, and which was broken open. Morris Kirk, who was sitting in his father's office when the sound of the approaching train was heard, hurried towards the warehouse and entered it, and was found afterwards fastened between a leaf of the door which the entering car had broken and a partition within the building, standing upright, dead. When the cars entered on the siding, the brakeman was not on the car nearest to that struck, but on one further back. He was called as a witness, and testified: "I had two brakes; the brake on the flat held the cars; there was only one brake on; there was no brake on the last car of my train," (the one nearest the standing car); "that is, it was not down; if it had been a good brake, I could have checked the train better from the hind car, but that was not so good as the one I was on."

There was testimony that the car struck by the detached train belonged to the Northern Central Railroad Company; that it had

been unloaded the day it was received; that a rule of the North Pennsylvania Company required that it should be taken away at the end of twelve hours; and that it had remained on the siding five days. When the collision occurred, a portion of the detached train was still on the main railroad track. Upon these general facts the charge against the defendants rested. Although they had no property in the car that was struck, it was under their control. The right to remove it from the siding existed exclusively in them. They had brought it from Williamsport, and had left it standing in its defective state. And there was testimony, as has been seen, that the nearest car of the entering train had also a defective brake. The force of the collision produced by the speed of the train, was sufficient to drive the car to the warehouse door and to break the scantling by which it was fastened. It was for the jury, in considering all the facts, to ascertain whether they made out the charge or not. What is negligence is always a question for a jury when the measure of duty is ordinary and reasonable care, and the standard of the degree of care shifts with circumstances: West Chester and Philadelphia Railroad Co. *v.* McElwee, 17 P. F. Smith 311. The facts which the testimony tended to prove were substantial, and no standard applicable to them has been judicially settled that would have justified the court in peremptorily disposing of the cause.

Leaving the question whether the testimony established a case on which the jury ought to pass, the defendants insisted that it was the duty of the court to declare, as matter of law, that the undisputed evidence showed contributory negligence on the part of Morris Kirk. This request was properly declined. The fact that the deceased left the office and went hastily to the warehouse was undisputed, certainly; but the purpose inducing him to do this was not affirmatively shown. The jury were told that if he acted negligently, and that negligence in the slightest degree contributed to the result, the verdict should be and must be for the defendants. The court said: "Did he act with ordinary prudence and reasonable care under the circumstances in going into the warehouse, and opening those doors? If he did not, then there can be no recovery by the plaintiffs." There was no direct proof that Morris Kirk heard the approaching train, and none that his purpose was to save the property of his father. The inferences necessary to make out contributory negligence might perhaps have been legitimately drawn by the jury from the facts shown. But surely they could not properly be drawn by the court. On this branch of the case, the answers to the third and fourth points of the defendants were emphatic instructions that there could be no recovery if the jury should find that the negligence of Elias Kirk or his agents contributed to the injury, or if they should find that the car that was struck was left standing on Mr. Kirk's siding without being effectively blocked or braked. Certainly the

North Pennsylvania Railroad Co. *v.* Kirk.]

defendants have no reason to complain that upon this point they were treated with injustice.

At the close of the case of the plaintiffs in chief, the defendants moved for a nonsuit, unless the court should be of opinion that they would thereby be precluded from offering any evidence if the motion should be overruled, in which event the motion would not be made. The court expressed the opinion that the defendants would be precluded by such a motion made and overruled. An exception was taken and a bill sealed, under which the first and second errors have been assigned. The expression of the opinion of the court on a motion in a form so peculiar, was not such a ruling as entitled the defendants to an exception and a review here.

On cross-examination, the defendants proposed to ask William Daub, the brakeman, this question: "Did you omit to do anything you could have done to prevent this accident?" The rejection of this question is the subject of the fourth assignment of error. It was competent to prove all that was done by the witness. But it was for the jury to decide whether by acts done or duties omitted he had been guilty of negligence.

In the fifth assignment, error is alleged to have been committed in rejecting an offer to prove by Elias Kirk that he had a policy of insurance on his son's life. The admission of this testimony would have been a violation of what is understood to have been the principles of construction uniformly applied to the Acts of 1855 and 1868. In the Pennsylvania Railroad Co. *v.* Keller, 17 P. F. Smith 300, the defendants in the court below took the ground "that any recovery must be strictly limited to a pecuniary consideration for a loss actually shown to have resulted from the negligence of the defendants." Chief Justice THOMPSON said: "The construction contended for would, beyond a question, deny compensation for death by negligence in almost every conceivable case. * * * But there is another aspect of it which will result from the principle insisted upon, viz.: that the test of the right to recover being 'the pecuniary damages clearly proved to have been suffered,' (Act of the 4th of April 1868), it will follow that all those who, from youth, old age, or other circumstances, are non-producers, may become the victims of negligence without compensation to survivors. Nay more, the corollary of the postulate would prevent compensation where the survivors are actually benefited by the death, either as gainers by the distribution of the property of the deceased, or by the riddance of a troublesome charge. The controversies that would arise, if this were the rule, would be repugnant to the sensibilities of every person."

It was admitted at the argument that the answers to the fifth and sixth points of the plaintiffs relating to the duties of common carriers, were abstractly accurate. The objection made to them was

[North Pennsylvania Railroad Co. *v.* Kirk.]

that they had no application to the cause on trial. There was nothing in them to confuse the issue or mislead the jury.

In the eighth point of the defendants, they asked for instructions that if the jury should find that Morris Kirk lost his life while lawfully engaged on or about the roads, works, depots or premises of the company, or about any train or car therein or thereon, although he was not an employee of the company, the plaintiffs could not recover. The point was refused, for which the tenth error was assigned. The evidence scarcely tended to show that the death occurred under any of the conditions stated in the point. It would seem that everything which the defendants could properly ask was accorded. In answering their sixth and seventh points, the court charged that there could be no recovery if the jury should find that the deceased voluntarily placed himself in the position of danger in which he was killed, for the purpose of saving property or protecting it from injury.

The eleventh assignment of error was not pressed.

Judgment affirmed.

Chief Justice SHARSWOOD and Justice PAXSON dissented, upon the ground that there was not sufficient evidence of negligence to submit to the jury.