## CHRISTENSEN v. OREGON SHORT LINE R. CO.

### No. 1626 (80 Pac. 746).

1. **RAILROADS—CROSSING ACCIDENT—ACTION FOR DEATH—QUESTION
   FOR JURY.**—In an action against a railroad for the death of plain-
   tiff's son, killed in a crossing accident, *held,* that the questions
   of negligence, contributory negligence, and proximate cause were
   for the jury.

2. **SAME—DEGREE CARE REQUIRED.**—A child is only required to exer-
   cise that degree of care and discretion that is reasonably expected
   from children of his own age.[1]

3. **SAME—NEGLIGENCE—EVIDENCE.**—In an action against a railroad for
   the death of plaintiff's son, who was killed by being run over at a
   crossing while driving cows along a highway, plaintiff claiming

---

[1] Riley v. Rapid Transit Co., 10 Utah 428, 37 Pac. 681.

that no signals of the approach of the train were given, it was proper to admit evidence as to how many persons were in the habit of sending their cattle over the highway, to show for what purpose and to what extent the highway was used at the time of and prior to the accident.

4. SAME.—Failure of a railroad company to keep a flagman or to maintain gates at a highway crossing in the country was not negligence.

5. SAME—EVIDENCE—ADMISSIBILITY.—In an action for the death of plaintiff's son, who was killed at a crossing, though the complaint did not charge negligence in failing to keep a flagman at the crossing, or in failing to maintain gates there, it appearing that the crossing was almost continuously used by the public, and there being evidence, as alleged in the complaint, that the train in question ran at an excessive speed and without giving signals of its approach, it was proper to admit evidence as to the absence of gates or a flagman; the jury being instructed that the evidence was admitted merely as bearing on the negligence charged in the complaint.

BARTCH, C. J., dissenting.

(Decided April 14, 1905.)

APPEAL from District Court, First District; Charles H. Hart, Judge.

Action by Lars Peter Christensen against Oregon Short Line Railroad Company. From a judgment in favor of plaintiff, defendant appeals.

AFFIRMED.

*P. L. Williams* and *Geo. H. Smith* for appellant.

*C. C. Richards* and *J. D. Call* for respondent.

APPELLANT'S POINTS.

Among the errors in the admissibility of testimony assigned in the record are those to the rulings of the court in allowing the plaintiff to introduce proof that other persons besides himself were in the habit of having their cattle driven to and from the pastures across this railroad crossing by children of about the same age as plaintiff's son. Several questions of

29 Utah—13

this character were asked of plaintiff and other witnesses.

·The court admitted over objections, testimony that the neighbors of plaintiff had their cattle driven by children ranging from six to fifteen years old. The evident purpose of such testimony was to show that plaintiff was only doing what his neighbors were doing and therefore was not negligent.

No usage or custom was pleaded, therefore usage or custom could not be proven. (12 Cyc., 1097.)

But even if it were pleaded it could avail nothing in this case, because local customs cannot change the law of negligence. (*Jenkins v. Hooper Irrigation Co.*, 13 Utah 100.) As shown by the testimony in this case, the crossing where the accident occurred was a country crossing outside of the city, in a sparsely settled district. We therefore contend that all of the evidence admitted over defendant's objection and exception, with reference to how fast the train was traveling as it approached this crossing, was error, because at this place defendant had a right to run its trains at such a speed as the demands or convenience of its business required. This court has repeatedly held that in a sparsely settled district it is not negligence as to those on the highway to run a railroad train at a high rate of speed. (*Silcock v. R. G. W. Ry.*, 22 Utah 179; *Clark v. O. S. L. R. R. Co.*, 20 Utah 401; *Bunnell v. R. G. W. Ry. Co.*, 13 Utah 314.)

Our position, is that it was error for the court to permit or authorize the introduction of any testimony of any kind or character with reference to any act or acts of negligence on the part of the company, except those specifically alleged in the complaint. (*Peay v. Salt Lake City et al.*, 11 Utah 331; *Coates v. U. P. Rd. Co.*, 24 Utah 304; *Ohlenkamp v. U. P. R. R. Co.*, 24 Utah 232; *Gurley v. Mo. Pac. Ry. Co.*, 93 Mo. 445; 14 Enc. of Pleading and Practice, 342; *Chicago, etc., Ry. Co. v. Driscoll*, 52 N. E. 921; *Ebersey v. Chi. City Ry. Co.*, 164 Ill. 518; *McCarty v. Rood Hotel Co.*, 144 Mo. 397; *Mitchell v. Prange*, 110 Mich. 78; *Plefke v. Knapp*, 145 Mo. 316; *Port Royal & A. R. Co. v. Tompkins*, 83 Ga. 759; *Ill. Cent. Rd. Co. v. Godfrey*, 71 Ill. 500; *Chicago W. D. R. R. Co. v. Kluger*, 9 Ill. App. 613; *Schindler v. Mil-*

*waukc*e *L. S. & W. R. Co.*, 77 Mich. 136; 42 A. E. Rd. Cases 192; *Hanlon v. South Boston Horse Rd. Co.*, 129 Mass. 310; *Price v. St. Louis Ry. Co.*, 72 Mo. 414; *Toledo W. R. Co. v. Foss*, 88 Ill. 551; *Toledo W. & W. R. Co. v. Beggs*, 85 Ill. 80; *Thomas v. Ga. R. & B. Co.*, 40 Ga. 231; *Buffington v. Atl. R. R. Co.*, 64 Mo. 246; *Edens v. Hannibal & St. Joe R. R. Co.*, 72 Mo. 212; *Ely v. St. Louis, etc., Ry. Co.*, 77 Mo. 34; *Field v. C. R. I. & P.*, 75 Mo. 614; *Cowan v. Muskegon R. R. Co.*, 84 Mich. 583.)

We next contend that in any event the plaintiff was not entitled to recover in this action, and therefore the defendant's motion for non-suit should have been sustained and its request for peremptory instruction should have been given, because by the undisputed evidence the negligence alleged was not the proximate cause of the accident and injury. By proximate cause is meant that cause which forms an unbroken connection between the wrongful act complained of and the injury, a continuous operation or succession of events so linked together as to make a natural whole, unchanged and uninfluenced by any independent cause intervening between the wrongful act alleged and the injury, and that the injury followed as a natural and probable consequence of the wrongful act of negligence alleged and that it ought to have been foreseen in the light of attending circumstances. All of these things were wanting in this case, and are all necessary before the defendant can be held liable. (*Railway Co. v. Elliott*, 55 Fed. 949; *Davis v. Chicago, Milwaukee & St. P. Ry. Co.*, 93 Wis. 470; s. c., 57 Amer. Stat. Rep. 935; *Huber v. La Crosse Ry. Co.*, 92 Wis. 636; 53 Amer. Stat. Rep. 940; *Galveston H. & S. A. Ry. Co. v. Mahala Chambers et al.*, 73 Texas 296; s. c., 11 S. W. 279; *Barkley v. Mo. Pac. Ry. Co.*, 96 Md. 367; *Long Island Rd. Co. et al., v. Killien*, 67 Fed. 365; *Cincinnati N. O. & T. P. v. Mealer*, 50 Fed. 725; *Lewis v. Flint & P. M. Ry. Co.*, 54 Mich. 65; s. c., 52 Amer. Rep. 790; *Burnett v. Eastern & A. & R. Co.* [N. J.], 10 A. & E. Ry. Cases, new series, 469; *Baltimore & Ohio Railroad Company v. Anderson*, 75 Fed. 811; *Dubois v. N. Y., etc., Rd. Co.*, 88 Hun 10; *Georgia Ry. Co. v. Williams*, 93 Ga. 253;

18 S. E. 825; *Wood v. Pa. Co.,* 177 Pa. St. 306; s. c., 5
Amer. & Eng. Rd. Cases, new series, 672; *Ry. Co. v. Stebbing,* 63 Md. 504; *Schaffer v. Rd. Co.,* 105 U. S. 249; *Bosch
v. Rd. Co.,* 44 Ia. 402; *Selleck v. Lake Shore Rd. Co.,* 58
Mich. 195.

### RESPONDENT'S POINTS.

The first assigned error upon which the appellant relies
for a reversal of the judgment herein is with reference to
the admissibility of the testimony introduced by the plaintiff
tending to prove that other persons were in the habit of sending their cattle to and bringing them from the pastures on
the west side of the railroad track and over the crossing at
which the accident occurred. This testimony, as well as the
testimony relating to the absence of gates, and other similar
testimony, the admission of which was assigned as error by
counsel for the appellant, was introduced for the purpose of
showing conditions that existed there, which required a
greater degree of caution and care upon the part of the defendant and its servants in running its train over that crossing, and as characterizing the negligent act of the defendant
in driving its engine and passenger train over the crossing at
the speed testified to, in reckless disregard of the safety of
any person who might be at, near or passing over the crossing.
The testimony was not only material for the reasons already
suggested, but for the further reason of showing notice to
the defendant company of conditions requiring care in passing over this particular crossing. (*Olson v. O. S. L. R. R.
Co.,* 24 Utah 468, 469; *Young v. S. H. H. Clark et al.,* 16
Utah 42; *Improvement Co. v. Steed,* 95 U. S. 161, 24 L.
Ed. 403.)

It is true that there were no allegations respecting these
matters in the complaint, but the plaintiff did not offer this
testimony as proof of acts of negligence, upon which the
plaintiff was entitled to recover, and did not urge upon the
trial of the case that it should be considered for that purpose, and the jury were cautioned by the court that this testimony was not to be so considered.

As before stated, the only purpose was to characterize the act of negligence charged and to show a condition which required the exercise of a greater degree of care and caution in passing over this crossing, and we think that the jury must have understood the purpose of the evidence and did not consider it for any other purpose. (*Young v. Clark,* 16 Utah 51.)

It is possible for the party not only to contribute to his own injury but even to be himself its immediate cause, and yet to recover compensation therefor. (1 Shear. & Red. on Neg., 123.) One, who, seeing his property imperiled, hastens to protect it and in doing so imperils his own person, is not necessarily deprived of remedy thereby. It is his right and duty to protect his property so long as he can do so without recklessly exposing himself to injury. (*Rexter v. Starin,* 73 N. Y. 601; *Wasmer v. Delaware R. Co.,* 80 N. Y. 212; *North Pa. R. Co. v. Kirk,* 90 Pa. St. 15.)

It will be borne in mind that plaintiff's son did not cross the track nor run in front of the engine, but that he was at the side of the track with his back towards the approaching engine, and intent upon driving the cow back to the herd. Even in the case of an adult we submit that the question would be one for the jury as to whether or not, under all of the circumstances, the injured party had recklessly exposed himself to a known danger. (*Riley v. Transit Co.,* 10 Utah 428; *Thompson v. Transit Co.,* 16 Utah 281; *Railroad Co. v. Stout,* 17 Wall. 657, 21 L. Ed. 745; *Kansas City R. Co. v. Matson,* 75 Pa. 503; *Berg v. Great N. R. Co.,* 70 Minn. 272; 73 N. W. 648; *Liming v. Ill. R. Co.,* 81 Ia. 246, 47 N. W. 66; *Raynowski v. Detroit, etc., R. Co.,* 74 Mich. 20; 1 Thompson on Neg. (Last Ed.), secs. 324-328; 2 Thompson on Neg. (Last Ed.), sec. 1492.)

STATEMENT OF FACTS:

This is an action by plaintiff to recover damages against defendant for the death of his son, a boy between eight and nine years of age, alleged to have been occasioned by the negligence of the defendant, on the 26th day of September,

1903, at a public crossing which is about 2,100 feet north of defendant's station house at Brigham City, Box Elder county, Utah. The particular acts of negligence alleged in the complaint are that, while plaintiff's son was driving some cows eastward along the wagon road from a pasture west of the railroad, the defendant carelessly and negligently ran and operated one of its locomotives and trains so as to cause it to approach said crossing at a dangerous, unreasonable, and unlawful rate of speed, and negligently failed to give any warning of the approach of said train by ringing the locomotive bell or sounding its whistle, as a result of which plaintiff's son, Alma Christensen, being unaware of the approach of the train, was struck and killed at the crossing mentioned. The answer of defendant denied these allegations, and affirmatively charged contributory negligence of the plaintiff and of said Alma Christensen. The facts, as they appear in the record, are about as follows: The plaintiff's son, Alma Christensen, was at the time of the accident engaged in driving three or four cows east along a country road from his father's pasture, which was eighty rods west and thirty rods north of the crossing. The road upon which the boy was traveling runs at right angles with and crosses four tracks, the main one being the third track from the west. Within eighty rods east of the crossing there are eight houses occupied by families; also a packing house at which there were from fifty to three hundred cases of fruit packed daily. West of the railroad are from ten to thirteen cow pastures, in which the inhabitants living on the east side pastured their cattle. Besides they have orchards and farming land there, and the only access to these pastures, orchards, and farming land is over this crossing. From seven to nine o'clock every morning cattle would be driven to these various pastures in herds, from three to twelve each—a total of from sixty to one hundred—by small boys and girls, of ages ranging from six to fifteen years, among whom was plaintiff' son, Alma. There were from one to four of these children with each herd. The children would return home, and in the afternoon, from four to seven o'clock, would go and get their herds and drive

them back again over the same crossing. Besides the boys and girls who used this crossing, there were about fifty other persons who used it daily. In addition to the pedestrians who used the crossing, there were between forty and fifty teams which passed over it each day, some of which would cross as often as ten times per day. One witness testified, and his testimony is uncontradicted, that "There is a constant string of wagons over that crossing, going over there all the time down to the orchards west of the track. There are about fourteen places that this lane [where the boy was killed] leads to. In the fruit season down there it is a perfect bed of industry. Whole lot of people down there." The highway on which the accident occurred enters Brigham City from the northwest, and is the first lane or highway of the kind north of the depot, and has been open and in use for forty years. The exact distance from the point where the boy was killed into the inhabited portion of the city is not given, but it appears from the record that it is not very far. The foregoing facts, in a general way, explain the condition at and in the vicinity of the crossing on and for a long time prior to September 26, 1903, when, at about 5:30 p. m. on a clear day, and upon a straight track, one of defendant's engines, attached to a special train carrying the officers of the road, was run by an engineer, who, the record shows, had been running over the crossing referred to for about twenty-nine years. The speed at which the train was going at the time of the accident is variously estimated from forty to sixty miles per hour, but the great preponderance of the evidence is to the effect that the rate of speed was greatly in excess—in fact, nearly twice that—of the regular passenger trains which passed over this crossing. In fact, the testimony of the defendant's witnesses shows that the speed of the train was from fifteen to twenty-five miles per hour greater than that of the regular passenger trains. The boy was returning home with his herd of four cows, which he was driving eastward over the highway and crossing; and there is evidence in the record which tends to show that he either heard or saw the approaching train before he reached the crossing. At what distance

is a matter of conjecture, there being a sharp conflict in the evidence as to whether or not on this occasion the usual and customary signals were given as the train approached the crossing. The boy checked his movements and stopped driving the cows, and was holding them at a point about fifty or sixty feet west of the main line, and about thirty feet west of the west track, and appeared to be waiting for the train to pass. Before the train arrived at the crossing, one of the cows ran forward towards the track. The boy followed for the purpose, evidently, of keeping her off the track, and out of the way of the coming train, and, in doing so ran between the cow and the engine. He did not get on the track or in front of the engine, but got so close to it that he was struck on the left side and on the head by the engine and killed. It is conceded, and the record shows, that he was a bright, trustworthy, and intelligent boy, for his age. At the conclusion of plaintiff's testimony, and after the jury had visited the scene of the accident and made a personal inspection of the premises, the defendant moved the court for a judgment of non-suit, first, on the ground that plaintiff had failed to prove that any alleged act of negligence of the defendant was the cause of the accident; and, second, that plaintiff, the father of the boy, was guilty of contributory negligence in sending his son, a boy of immature years, to drive stock along a lane across which ran the railroad track in question. The motion was overruled, and after the defendant had put in its defense the cause was submitted to a jury, which returned a verdict in favor of plaintiff, and assessed his damages at $2,500. From the judgment entered on the verdict, defendant has appealed to this court.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Defendant requested the court to peremptorily instruct the jury to return a verdict in its favor—no cause of action—which the court refused to do. We think the court was right in refusing this instruction. Nor do we think the court erred in overruling defendant's motion for a non-suit.

The undisputed evidence in the case shows that the highway and crossing in question are, and for many years have been, used by the people (men, women, and children) who live in that vicinity for the purpose of going to and returning from their farms, and also to drive their cows to and from the pastures. During the season of the year in which the accident occurred the lane and crossing are almost constantly used and traveled by the people of that immediate vicinity. Under these circumstances, the defendant company was chargeable with notice of the use that was being made of the crossing, and was legally bound to use reasonable and ordinary care in the management of its trains when approaching and passing over the crossing to prevent injury to those who at the same time may happen to be traveling along the highway, and in the act of crossing the company's tracks. In the case of *Young v. Clark et al.,* 16 Utah 42, 50 Pac. 832, this court held that:

> "Where the public in considerable numbers have been accustomed for a length of time to use a bridge or railroad track as a footpath in populous cities or thickly settled communities, without molestation or objection from the company, and by reason of such general custom the presence of people upon such track or bridge is probable or might reasonably be anticipated, those in control of passing trains are bound to use reasonable diligence and precaution to prevent injury to those who might be thereon."

The great preponderance of the evidence shows that the train on this occasion, just prior to and at the time of the accident, was being run at an unusual and high rate of speed —much greater than that of the regular passenger trains when they passed over this part of the company's track. The engineer testified that when he saw the cow go upon the track he shut off the steam, applied the air brakes, and used every appliance at his command to stop the train, but did not succeed until it had gone from 900 to 1,000 feet. W. O. Knudson, a witness for the plaintiff, testified that he saw the

engine strike the cow, and "when struck she went into the air to about the top of the smokestack, and landed down the track fifty-three steps;" that he thought the train was going fifty miles an hour at a point 160 feet south of the crossing, and after striking the boy it went down to the creamery, a distance of probably 2,000 feet. Witness W. L. Wright testified in part as follows: "I saw the cow go into the air. . . . The cow was thrown into the air as high as the smokestack. After striking the cow, the train ran up to the creamery, a little over a quarter of a mile." David Beuchanan, another witness, testified in part as follows: "I saw the collision. The cow was knocked as high in the air as the top of the smokestack. . . . When the train struck, it was running at the rate of sixty miles an hour." Under these circumstances, the question of negligence on the part of the defendant, and that of contributory negligence on the part of the plaintiff and the boy who was killed, were questions of fact for the jury to determine.

It is urged by the appellant that the proximate cause of the accident was the act of Alma Christensen, plaintiff's son, in going so dangerously near the track as to come in contact with the engine, which, it is claimed, is sufficient of itself to preclude recovery. Whether the rate of speed here was negligence, and, if so, whether such, or the failure to give signals, or both, or some act of the child, was the proximate cause of the collision and injury, were questions of fact for the jury. (*Ill. Cent. R. Co. v. Benton*, 69 Ill. 174; *Sauerborn v. N. Y. C. & H. R. Co.* (Sup.), 23 N. Y. Supp. 478; *C. A. R. Co. v. McDaniels*, 63 Ill. 122.) The boy was rightfully on the highway with his cows, and when his attention was attracted to the approaching train he at once stopped his cows, and placed himself between them and the crossing, presumably for the purpose of holding them there until the train passed by. Before the train arrived at the crossing, one of the cows broke away from him and started in the direction of the railway crossing; and the boy, acting under a natural as well as a manly impulse, not a reckless or wrongful one, started in pursuit of the animal. Up to this time he had

exercised the same degree of care and caution as would be expected and required of a grown person acting under the same or similar circumstances. In following the cow the boy did not go upon the track, but kept to the west of it. He was intent upon saving the cow, and his back was toward the approaching train when he was struck. In order to hold that this last circumstance or act of the boy was the proximate cause of the accident, and that the defendant is thereby relieved from liability for its own acts, which the jury must have found were negligent, we must hold, as a matter of law, that the boy was negligent and failed to exercise that due care for his own safety while in pursuit of his cow that would reasonably be expected of a boy of his age, and with his intelligence, understanding, and experience, which the record shows was equal to, if not superior to, that of the average boy of his years. For it is well settled that a child is only required to exercise that degree of care and discretion as is reasonably expected from children of his own age. (1 Shear. & Redf. Negligence, p. 106; *Riley v. Rapid Transit Co.,* 10 Utah 428, 37 Pac. 681.) Even though we should apply the same legal test to the actions of the boy on that occasion as would ordinarily be applied, under like circumstances and conditions, to people of mature years, we are not prepared to say, as a matter of law, he was guilty of contributory negligence.

"One who, seeing his property imperiled, hastens to protect it, and in so doing imperils his own person, is not necessarily deprived of remedy thereby. It is his right and duty to protect his property so long as he can do so without recklessly exposing himself to injury." (1 Shear. & Redf. Neg., p. 123; *Rexter v. Starin,* 73 N. Y. 601; *Wasmer v. Delaware R. Co.,* 80 N. Y. 212, 36 Am. Rep. 608; *North Pa. R. Co. v. Kirk,* 90 Pa. 15.)

As to whether the boy used that same degree of caution and prudence for his own safety as would be expected of children of his age, experience, and intelligence, under the

same or similar conditions, was, under the circumstances of this case, a question for the jury · to determine. And even if it be assumed that he saw or heard the approaching train before he started after the cow, yet there is no evidence to show that he knew of the rate of speed the train was being run at the time, or as to its close proximity to the crossing. It is conceded that when he was struck by the engine he was at one side of the track. And for aught that appears from the record, he may have been in the act of getting away from the train and out of danger, but, on account of the high rate of speed it was being run, was unable to do so.

During the progress of the trial the following questions were asked of the plaintiff, which the court permitted him to answer: "Do you know, Mr. Christensen, whether others were in the habit of sending their cattle down over that same road to pasture at that time?" "How many different parties were sending their cattle down there at that time when you were sending your down?" To these questions, and others of like character, defendant objected on the ground that they were irrelevant and immaterial. The ruling of the court in admitting this testimony is now assigned as error. This was proper evidence, as it tended to show for what purpose and to what extent the highway was used at the time of and prior to the accident.

Evidence was also introduced which showed that there were no gates at this crossing, and that no flag or flagman was kept there to warn people who used the highway of the approach of trains. To this evidence defendant objected on the same grounds stated in the objections interposed to the questions just referred to, and for the reason that there was no allegation in the complaint charging negligence because of the defendant's failure to keep flagmen stationed at the crossing. While the defendant's failure to keep a flagman and to maintain gates at the crossing was not negligence, yet it was not error for the court to admit evidence showing that there were neither flagmen nor gates there, as such evidence, in connection with proof of the conditions respecting the num-

ber of people who used this highway, whether adults or children, the purposes for which it was used, its locality with reference to a populous community, or otherwise, would have a bearing on the question as to whether or not the defendant was negligent in running its train at the unusual and high rate of speed which the weight of the evidence tends to show it was run on that occasion. This testimony was not admitted to prove negligence on the part of the defendant in not having gates or a flagman at the crossing. The fact of the presence or absence of a gate or flagman may be proven as a circumstance among others surrounding the crossing, and by which the degree of care requisite in the handling and running of the train may be affected, and whether, in view of the presence or absence of a flagman or gate, among all other circumstances, the train was moved and ran with prudence or negligence. For it may well be considered by the jury that, at a crossing so greatly and almost continuously used by the public as was here shown by the evidence, a greater amount of vigilance and care was to be observed by the servants in charge of the train in respect to signals, rate of speed, and handling of the train, in the absence of gates and a flagman, than would be required with the presence of gates and a flagman. In other words, a certain speed might not be considered by the jury as negligence at a crossing with the presence of gates and a flagman to warn the traveling public, while that same speed might be considered negligence at the crossing when there were no gates or a flagman. For this purpose the evidence was admitted, and for such purpose was competent. (*Chicago R. Co. v. Lane,* 130 Ill. 116, 22 N. E. 513; *McGrath v. R. Co.,* 63 N. Y. 522; *Reed v. R. Co.* (Sup.), 87 N. Y. Supp. 810; *Abbott et al. v. Dwinnell,* 74 Wis. 514, 43 N. W. 496; *Heddles v. R. Co.,* 74 Wis. 239, 42 N. W. 237; *Hoye v. R. Co.,* 67 Wis. 1, 29 N. W. 646; *Houghkirk v. D. & H. Canal Co.,* 92 N. Y. 227, 44 Am. Rep. 370.)

The trial court in this case, at the time the evidence complained of was admitted, restricted it to the acts of negligence alleged in the complaint. The court said:

"The danger of admitting the testimony is, it might be taken by the jury as evidence of some act of negligence that is not within the issues of this case; that there may have been negligence upon the part of the company in not maintaining gates or watchmen there as independent matter, apart from the negligence that is alleged in the complaint. Limiting and restricting the testimony to a consideration of whether the acts of negligence as' charged in the complaint existed or not, the testimony, I think, is admissible; but the jury should observe the distinction, and not consider it as proof of some independent act of negligence that is not charged here. With that limitation and restriction, I think the testimony may be admitted. As before explained, it is only admitted for the bearing it may have, if any, upon the acts of negligence alleged."

The court also gave the jury the following instruction:

"Before the plaintiff is entitled to recover in this action, he must show by a fair preponderance of the evidence negligence on the part of the railroad company in the particulars alleged in the complaint and he must further show by the same amount of evidence—that is, by a fair preponderance—that the negligence alleged in the complaint was the proximate cause of the injury complained of."

The court having thus carefully admonished the jury at the time the evidence was admitted, and later on, in its general instructions, limited the testimony and plaintiff's right to recover to the acts of negligence alleged in the complaint, we do not think the jury could have been misled, or the rights of the defendant in any way prejudiced, by the admission of the testimony respecting the absence of flagmen and gates at the crossing.

The judgment of the district court is affirmed, with costs.

STRAUP, J., concurs.

BARTCH, C. J. (dissenting).

I cannot concur in the opinion of the majority in this case. A careful examination and consideration of the evidence in the record, including the testimony of the conservative witnesses on both sides, as well as the extravagant statements made by several witnesses referred to in the majority opinion, which are not corroborated by the circumstances in evidence, shows conclusively to my mind that this is one of those unfortunate accidents for which, in law, there is no liability.

In regard to the number of houses, ranging from thirty to eighty rods distant from the east side of the track, and the number of people crossing the track in the busiest season of the year—the fruit season—plaintiff's witness W. O. Knudson, whose statement that the cow flew into the air when struck, is quoted in the majority opinion, testified: "Eight, I think, would come within eighty rods. All of these, except the packing house, would be dwelling houses, and the families living in them would have occasion to pass over this crossing, coming to and from their farms and hauling produce. According to my best judgment, there would be as many as fifty people cross the track in various ways in a day. That would be during the fruit season." Respecting conditions as to population in the vicinity of the track, the plaintiff himself testified: "At the place where this accident occurred there is a little, narrow street down there, commonly called a 'lane.' It is only about twenty-five or thirty feet wide. It leads from down west over the tracks to some farming land out there, and furnishes a means of egress and ingress to the farms west of the track. There is one house out there, north of where my land is, where some eight or ten people live. This is the only place where there is a house out there, except a place further beyond, where there are some feed stables. I do not know whose place it is. This street where the accident occurred does not bear any name. Forest street is a street here

in Brigham City that runs down to the depot. The next street north is about half a mile from the depot, and that is where the accident occurred. Then about a quarter of a mile north of the place is Watery lane, and about halfway between the street where the accident occurred and Watery lane, and out west, is the house I speak of; and that is the first house where people live that is north and west of the depot, and that is the only one between Dry Lake, way out north of Brigham several miles, and the depot, on the west side of the tracks, except the feedyards out there, and that is out north of Watery lane, and they are away out west on the Corinne Cut-Off. They are a long distance west of the main line of the Short Line. The house I refer to is about a quarter of a mile west, and these two places are the only places on the west side of the track where there are buildings between the depot and the dry lake, and that is out several miles north of the city. On the east side of the track there are several small fruit farms and houses. The dry lake referred to is two or three miles north of the depot. On the east side the first house between the depot and this crossing is Knudson's place, which sets back from the track about thirty or forty rods. The next place is just north of the crossing, and about thirty or thirty-five rods east of the track and these two places are the nearest ones to the crossing where the accident occurred." This evidence does not show conditions as to density of population that do not exist at many country crossings in this State. Nor is there any statute limiting the rate of speed at such crossings. Yet, in the absence of such a statute, this court, in effect, holds that a rate of speed of from forty to fifty miles per hour—the rate at which this train, according to the statements of the conservative witnesses, was running at the time of the accident—is negligence per se, where the conditions are as here. In my judgment, this is not in accordance with the weight of authority.

The majority say: "Even if it be assumed that he [the boy] saw or heard the approaching train before he started after the cow, yet there is no evidence to show that he knew

of the rate of speed the train was being run at the time, or as to its close proximity to the crossing.". In reply to this it may be said that there is no necessity to assume that the unfortunate little boy saw or heard the train, for the facts and circumstances in evidence clearly show that he saw the train, was aware of its proximity to the crossing, and merely made a fatal mistake in going too near the track. The little boy simply went too near the track, and, no doubt, if the train had been running but twenty miles an hour when he was struck, the result would have been the same.

It appears to me there was also some evidence erroneously admitted—especially that in relation to gates and flagmen. Every one knows that railroad companies in this state keep neither gates nor flagmen at country crossings, even where the country is more densely settled than in this instance, and hence the introduction of such evidence must have been without legitimate purpose.

While this was a distressing accident—one which naturally arouses a person's sympathies, for the unfortunate—still, to my mind, after close scrutiny of the evidence contained in the record and of the opinion of my associates, the conclusion that the judgment is erroneous and ought to be reversed is inevitable. I therefore dissent.