# Gosh v. Lehigh & Wilkes-Barre Coal Co., Appellant.

*Negligence—Parent and child—Nonresident aliens—Adult son —Parental relation—Proof of age—Act of June 7, 1911, P. L. 678, and Act of June 2, 1891, Art. XIV, Sec. 1, P. L. 176.*

In an action brought by nonresident alien parents, in their own name, to recover damages for the death of their son, where the plaintiffs allege in their statement of claim that although the son

was over twenty-one years of age, the family relation between them still existed, and it is shown to the court that under the laws of the plaintiffs' country, the age of majority was twenty-four years, the plaintiffs do not prove themselves out of court, or establish a material variance between the allegata and probata by offering in evidence a power of attorney to another person to sue in their name, in which it is averred that their son was a minor; and this is the case (1) because the plaintiffs' case in chief in no way depended on the contents of the letter of attorney, as their suit was brought in their own names, and (2) because under the circumstances it could in no way have been declared as a matter of law that the statement of the parents in describing the personality of their son was a conclusive admission of a fact which destroyed their cause.

In such a case there is sufficient evidence for the jury to find that the son was over the age of twenty-one, where the court properly admits in evidence a notice required under Sec. 1, Article IV, of the Act of June 2, 1891, P. L. 176, filed with the inspector of mines, in which the deceased's age is stated to be twenty-two years; and where an aunt of the deceased testifies that he had lived with her for ten years prior to the time of his death; that he had been brought to her from Europe when a boy by his godmother, who then stated his age to be twelve years. The admission of the declarations of the godmother is harmless error in such a case in view of other uncontradicted evidence of the fact that the deceased was more than twenty-one years of age.

If there be a reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence occasioning the death of a party from whom it arose, will sustain an action.

The continuance of the family relation between an adult son and his nonresident alien parents is established by proof of the declarations of the deceased to his banker, at times when he was sending money abroad, of his intention to contribute to his parents' support, and by similar declarations made to his aunt, the only mother he had known since he was a boy, to his cousin with whom he lived on terms of intimate acquaintance, and to others, all of which uniformly indicated a steady attitude of filial affection and a permanent intention to aid his father and mother financially during their declining years.

Argued March 7, 1917. Appeal, No. 58, March T., 1917, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1914, No. 1678, on verdict for plaintiff in case

63, (1917).]  Statement of Facts—Assignment of Errors.

of Thomas Gosh and Annie Gosh, each in his and her own right, v. The Lehigh & Wilkes-Barre Coal Co.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Trespass to recover damages for death of plaintiffs' son.  Before STRAUSS, J.

From the record it appeared that on August 25, 1913, John Gosh, the plaintiffs' son, was killed by a fall of rock in Nottingham Mine, at Plymouth.  The accident, it was averred in the statement, was the result of negligence in that defendant failed to maintain the roof of the mine in the safe condition required by the Mine Ventilation Law of June 2, 1891, P. L. 678.  Other facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiffs for $1,000.  Defendant appealed.

*Errors assigned,* among others, were (7) refusing to strike out the evidence of Anna Gosh, the aunt of the deceased as to his age; (8) in allowing Anna Gosh to testify to the declarations of the godmother of the deceased as to his age; (9) in admitting in evidence the report or notice filed by the defendants with the mine inspector in which the age of the deceased was stated to be twenty-two years; (10-15) admitting in evidence various declarations of the deceased as to the continuance of family relations with his parents; (18, 19) portions of charge as follows:

[Now, substantially, all the evidence in the case upon the question of his age is to the effect that he was over twenty-one years of age at the time of his death, and I say to you that the power of attorney which speaks of the deceased as a minor child is not necessarily in contradiction of the evidence that has thus been given, because it has been shown to the court that in Austria, where this power of attorney was executed, the law is that a son remains a minor until he is twenty-four years

of age; and as this power of attorney was executed in Austria, though it was written in America, there is no essential or necessary contradiction between the power of attorney and the evidence in the case that he was twenty-one years of age and more at the time of the accident.]   (18)

[Now, the evidence in the case on that subject is this. The aunt, with whom he lived, has testified that his twenty-first birthday occurred on the 24th of June, 1912; outside of that his employers got some information, wherever it might have been from, in the course of their duties in reporting this accident, and reported his age at twenty-two, and that is some evidence, because it is not an uncommon thing for employers to have records of the ages of employees, and in fact the law requires them to have records of the ages of employees under certain ages, in connection with certain employments, so the fact that the employer reported this young man to have been twenty-two at the time of his death, and that report being made in pursuance of a statutory requirement, is some evidence of his age, and, therefore, I say to you, that, under all the evidence in this case, there is no necessarily contradictory evidence of the fact that he was twenty-two years of age and over at the time of the accident.]   (19)

*Evan C. Jones*, with him *Gilbert S. McClintock, Arthur Hillman* and *Andrew H. McClintock*, for appellant. —The declaration of the plaintiffs, under oath, as evidence by their power of attorney, was that John Gosh was a minor at the time of his death: Lewis v. Hunlock, Etc., Turnpike Co., 203 Pa. 511.

There was no competent evidence in the case that John Gosh, at the time of his death, was upwards of twenty-one years of age.

*Charles B. Lenahan*, with him *Edward A. Lynch*, for appellees.—The notice was properly admitted: Ætitus

v. Spring Valley Coal Co., 92 N. E. R. 579; Tomczak v. Susquehanna Coal Co., 250 Pa. 325.

Facts concerning pedigree may all be established by a member of the family connected therewith: American Life Ins., Etc., Co. v. Rosenagle, 77 Pa. 507; Sitler v. Gehr, 105 Pa. 577.

The family relationship existed between John Gosh and his parents at the time of his death: Penna. R. R. Co. v. Adams, 55 Pa. 499; Deni v. Penna. R. R. Co., 181 Pa. 525.

OPINION BY HEAD, J., October 8, 1917:

The plaintiffs brought this action to recover damages for the death of their son who was killed by a fall of slate from the roof of a mine of the defendant company. They alleged his death occurred because of the negligence of the defendant company and the verdict of the jury seems to have established that fact. They were, when the suit was brought, and always have been nonresident aliens. Under our Act of 1855 they could not have recovered, as was held by the Supreme Court in Deni v. Penna. Railroad Co., 181 Pa. 525. The opinion in that case was delivered in 1897 and determined that the provisions of our Act of 1855 could not be invoked in our courts by parents who were nonresident aliens. Our legislature, however, by the Act of June 7, 1911, P. L. 678, so amended the Act of 1855 as to empower the parents of one whose life was lost through the negligent act of a citizen or corporation in the State of Pennsylvania to maintain such an action even though they were not citizens or residents of the State but were citizens and residents "of any foreign country or the subjects of any foreign potentate." Their cause of action, apart from the fact that the death of their son resulted from the negligent act of the defendant company—with which question we now have no concern—is thus stated in the declaration: "Although their said son at the time of his death was over 21 years of age, the family relation be-

tween them still existed and said son had contributed a large portion of his earnings to their support and maintenance and had intended and declared that he would do so during their lives, etc."

Upon the trial of the case the plaintiffs' counsel offered in evidence a power of attorney executed in Austria by the plaintiffs themselves, the father and mother of the deceased. In that instrument they authorized their attorney in fact to "sue for, collect and receive all such sums of money, debts and demands which are or shall be due, owing and payable to us by the Lehigh & Wilkes-Barre Coal Company as wages of manual labor of our son, John Gosh, a minor, who was killed in the mines of the said company on August 25, 1913." Also to institute and prosecute to final judgment an action at law "for damages for the death of our said minor son, John Gosh, etc." As the action was brought in the names of the parents and not by their attorney in fact, it would seem to have been unnecessary, in order to make out a prima facie case at least, to put this instrument in evidence but it was offered and admitted. The question then arose, had the plaintiffs proven themselves out of court or established such a material variance between the allegata and probata as to prevent a recovery without an amendment of the pleadings which was neither asked for nor allowed: Manifestly it was the function of the trial judge to construe the written instrument. There was nothing ambiguous in the language used to convey the power. The difficulty, if any, arose from the words used by the parents to describe the personality of their son. The instrument was written in the English language, as we understand it, prepared in this country but executed in Austria. The learned trial judge, to enable himself to correctly construe the written instrument, received evidence, apart from the hearing of the jury, that under the laws of Austro-Hungary a child did not attain his or her majority until he or she reached the age of twenty-four years. As the

evidence taken on this subject came from a competent source and was entirely uncontradicted, the learned trial judge instructed the jury the expression in the letter of attorney signed by the parents was not necessarily inconsistent with the proof on the trial that the son, at the time of his death, was more than twenty-one years of age.   In this we see no error.   First, because the plaintiffs' case in chief in no way depended on the contents of the letter of attorney, and secondly, because, under the circumstances, it could in no way have been declared, as a matter of law, that the statement of the parents in describing the personality of their son was a conclusive admission of a fact which destroyed their case.

What then was the evidence upon which the plaintiffs relied to establish the two material facts in their statement of claim?   Section 1 of Article XIV of the Act of June 2, 1891, P. L. 176, provides: "Notices of decease or serious injuries resulting from accidents in or about mines or collieries, shall be made to the inspector of mines, in writing, and shall specify the name, age and occupation of the person killed or injured, and also the nature and character of the accident and the injury caused thereby."   By virtue of this legislative requirement the defendant company, through its officer, made a report of the death of their employee, John Gosh, and the nature of the accident which brought it about.   The record thus made by legislative command was produced by the plaintiffs and offered in evidence at the trial. Among other things it contained these questions and answers: "Name of person?   John Gosh.   Citizen? Yes.   Nationality?   Slavish.   Occupation?   Slope footman.   Age?   22."   We can discover no reason why, as against the defendant, who made and was obliged by law to make the report, this could not be properly admitted in evidence to establish, prima facie at least, the age of the deceased at the time of his death.   There was evidence from the lips of his aunt that the deceased came to her home in this country when he was a boy; that he

had lived in her household, practically as a member of her family, for ten years and until the time of his death. Although he was yet unborn when she left the old country and she knew nothing by record or otherwise until he arrived of the exact date of his birth, she knew he was yet a boy when he arrived. She was permitted to testify, under objection and exception, that he had been brought to her home in Wilkes-Barre by his godmother who then stated his age to be twelve years. Upon motion for a new trial the learned court below reached the conclusion he had been in error in receiving from the witness proof of the declarations of the alleged godmother. This conclusion was sound for either one of at least two reasons. There was no evidence, dehors the declaration itself, that the person making it was so related to the family of the deceased as to make her statements provable by hearsay, and for the further reason there was no evidence the declarant could not have been produced as a witness in open court to testify to any material facts within her knowledge. If the admission at the trial of these declarations was harmful error, it would have been the duty of the court below to have granted a new trial. He reached the conclusion, however, such error was not harmful because there was other uncontradicted evidence of the fact that deceased was more than twenty-one years of age. Of course his aunt, with whom he lived for ten years, and who stood in loco parentis towards him, could have with propriety described his size, weight, appearance, etc., when he first came to her home ten years before the date of his death. Speaking for myself, I should say that when it appeared she had been a married woman for thirty-seven years and raised a family of her own, she would have been a competent witness to give an opinion as to the age of the boy who came to make his home with her. But no such evidence was sought or received. That he knew and she knew, in the intimate family relation that grew up between them, his birthdays, we suppose would hardly be doubted. Al-

though the case was carefully tried by vigilant counsel and the record bristles with objections and rulings, we have these questions and answers which appear to have invited no objection or motion to strike from the record: "Q.—Who brought the boy to your home, if you know? A.—Why his godmother or sponsor brought him along to this country. She brought him from Europe to my home. Q.—Now, whether or not he lived with you from that time until the time he died? A.—Yes." We are of opinion therefore there was competent and sufficient evidence to warrant the jury in reaching the conclusion the deceased, at the time of his death, was more than twenty-one years of age.

The fact just stated, however, necessarily required the plaintiffs to go further and offer testimony to support a finding that the family relation still continued. In cases of this kind the basis of a recovery is well stated in P. R. R. Co. v. Adams, 55 Pa. 499: "The rule is that if there be a reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence occasioning the death of a party from whom it arose, will sustain the action." The report of that case discloses the nature of the evidence upon which was predicated the expectation by the parents of future support from their son who had attained his majority. "There was evidence that the deceased was unmarried, and about 26 or 27 years of age at the time of his death, and had lived with his father until then; that his father owned a house and lot of about 40 acres, was advanced in life; that the deceased was a worthy, industrious young man; that he worked some for his father, gave him money, $40 of which had been bounty-money; that he had always assisted his father, and had said he always would." The case has been cited with approval many times and we can discover nothing in the subsequent cases to support the theory advanced in the able brief of the appellants, to wit, that no declarations made by the deceased of his intention to

contribute to the support of his parents are admissible
as evidence unless made directly to the parents them-
selves. There is nothing in the Adams case to warrant
such a conclusion. The intention of a manumitted son
to continue to support his parents must necessarily be
proven, if proven at all, by his own acts or declarations.
In most instances where the question has arisen the son
has been physically separated from the family of his
parents by the necessities of his employment. If there
was no way in which he could declare his intention to
support or contribute to the support of his parents ex-
cept the declaration were made directly to them, there
would be but little opportunity for parents to avail them-
selves of the beneficent principles of law we are con-
sidering.

In Lewis v. Hunlock, Etc., Turnpike Co., 203 Pa. 511,
Mr. Justice MITCHELL quotes with approval the follow-
ing language from the opinion of Railroad Co. v. Adams,
supra: "Parents and children in the section seem to be
words used with an intention to indicate the family re-
lation in point of fact as the foundation of the right of
action without regard to age......Under age the law
presumes the relation to exist and that stands for proof
until the contrary appears. Over age no doubt but the re-
lation must be shown to exist in point of fact. And if
there be a reasonable expectation of pecuniary advantage
from a person bearing the family relation, the destruc-
tion of such expectation by negligence occasioning the
death of the party from whom it arose, will sustain the
action. North Penna. R. R. Co. v. Kirk, 90 Pa. 15." We
discover nothing in the case of Deni v. Railroad Com-
pany to disturb the principle so clearly enunciated in
many cases. The action was by the mother to recover
damages for the death of her son, alleged to have resulted
from the negligent act of the defendant. The most that
can be gathered from the opinion of Mr. Justice McCol-
LUM in that case is contained in these words: "Of
course Stephen's (the son's) declarations were not com-

petent evidence of contributions by him to her maintenance."

In the case at bar we think there is abundant evidence from a competent source that the deceased had with reasonable regularity been contributing to the support of his parents. There is a quantity of evidence by his declarations to his banker, at times when he was sending money abroad, of his intention to continue to contribute to their support. Similar declarations were made to his aunt, the only mother he had known since he was a boy, to his cousin, with whom he lived on terms of intimate acquaintance, and to others, all of which uniformly indicated a steady attitude of filial affection and a permanent intention to aid his father and mother financially during their declining years. The learned trial judge could not have declared, as matter of law, in the face of such evidence, that the jury could not find as a fact these plaintiffs had a reasonable expectation of support from the deceased.

If therefore the plaintiffs were authorized by the statute to maintain this action; if the life of the deceased had a pecuniary value to them, we are unable to say the learned trial judge abused his discretion in refusing to set aside the verdict on the ground the damages awarded by the jury were excessive. The assignments of error are overruled.