Houston & Texas Central Railway Company v. L. H. Bulger.

Decided April 13, 1904.

**1.—Impeaching Witness—Indictment for Perjury—Evidence.**

Under the rule that in impeaching a witness the examination must be confined to his general reputation and not include particular facts, the court properly sustained objections to a question asked of a witness whether he had ever been indicted for perjury, and the introduction in evidence of an indictment charging him with this offense; no presumption of guilt arose from such indictment.

**2.—Evidence—Pumping Station—Keeper—Authority.**

Excluded evidence offered to prove that a keeper of defendant's pumping station had received instructions before, and at another place than the one where the accident happened, not to allow people on the premises, held immaterial where the testimony showed that he had no authority to invite people on the premises.

**3.—Possession of Property—Right to Keep Out Intruders.**

When one places his property in the exclusive control of another the right to protect the possession from intruders and prevent any interference with the property arises from the duty of the one placed in possession to properly control and manage it.

**4.—Charge—Liability—Negligence—Child Scalded.**

Charge held correct which made defendant liable for injuries to a child scalded by steam and hot water from a stationary engine at defendant's pumping station, if he was on the premises with the knowledge and consent of defendant's servant; facts held to support a recovery for negligence in such case.

**5.—Same—Contributory Negligence—Evidence.**

A charge requiring the jury to find that the evidence establishes the existence of a specific group of facts before they can find for defendant on its plea of contributory negligence approved.

**6.—Same—Same—Degree of Care to Avoid Injury.**

A charge defining contributory negligence as to a child injured to be a failure on his part to exercise, for his own safety, such a degree of care as would have been reasonably expected of him, instead of such a degree of care as is reasonably to be expected from children of his age, was correct and required by the fact that plaintiff was a dull boy and might not have such discretion as is reasonably to be expected from a child of his age.

**7.—Burden of Proof—Charge.**

Facts in this case held to warrant a charge on burden of proof.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

*Baker, Botts, Baker & Lovett* and *Head & Dillard,* for appellant.

*Wolfe, Hare & Maxey,* for appellee.

NEILL, Associate Justice.—This suit was brought by appellee to recover damages for personal injuries inflicted by the alleged negligence of appellant. The defenses plead were not guilty and contributory negligence. The trial resulted in a judgment in favor of the plaintiff for $4000, which is appealed from.

*Conclusions of Fact.*—On the 8th day of March, 1902, the defendant owned and maintained, in connection with its railway, a. pumping station at Denison, which was in charge and under entire control of its

servant, E. M. Hood, who had authority to forbid and prevent parties from trespassing upon the premises where situated. The motive power for the pumps was furnished by an engine, installed in a rectangular building, situated fifty or sixty feet east of the railroad track. There was a well twelve or fourteen feet east of the house. A pipe extended through the north wall of the building to a tank on the outside through which water was conveyed. Water was pumped from the well to a tank and conveyed from the tank through a pipe, extending therefrom through the north line of the building to a barrel, standing inside, from which water was supplied the boilers of the engine. Extending from the boiler to the west was a pipe, the end of which lay on the doorsill of the building, through which hot water and steam, when necessary, was blown from the engine.

On the day referred to the plaintiff, a minor, about 13 years of age, was at the pumping station and was scalded by water and steam let off from the engine by Mr. Hood, through the pipe, the end of which lay on the doorsill.

The facts so far are shown by the undisputed evidence, and are stated only because of their pertinency to controverted facts at issue. These are: (1) Was the defendant guilty of negligence proximately causing plaintiff's injury? (2) If so, was the plaintiff guilty of contributory negligence? And (3) if not guilty of such negligence, what is the quantum of his damages?

In reaching our conclusions on these issues we will be guided by the well-established principle that the most favorable inferences which the entire evidence will authorize should be drawn in support of the verdict.

1. Upon the first question the evidence is reasonably sufficient to show these facts: (1) That the plaintiff went on the premises in company with defendant's servant, Hood, who was in exclusive control thereof, at his invitation and remained there, until injured, with his consent; (2) that the premises were dangerous to persons of plaintiff's age, intelligence and experience; (3) that the dangerous character of the premises to persons of plaintiff's immature age and discretion were known to Hood when he allowed plaintiff to go there with him, or should have been known by one occupying the relation he did to the company of ordinary prudence and discretion; (4) that while plaintiff was on the premises Hood gave him a wheel-shaped instrument and directed him to turn off the water with it flowing through the pipe extending from the tank to the barrel in the pumphouse; (5) that when plaintiff was returning, after shutting the water off as directed, Hood, without plaintiff's knowledge, without exercising such care and prudence for plaintiff's safety as would have been exercised under the same or like circumstances by a man of ordinary care and prudence, turned the valve of the pipe through which hot water and steam were expelled from the boiler of the engine, and plaintiff, before he knew of the flow of the water and steam, stepped in front of the end of the pipe on the doorsill and was badly scalded.

The verdict involves the finding of these facts by the jury; and, from them, the ultimate fact that defendant was guilty of negligence proximately causing plaintiff's injury. And as the question of negligence is for the jury except in such cases where the facts are such that all reasonable men must draw the same conclusion from them, we conclude, upon the first question stated, as is shown by the verdict.

2. As the burden of proving contributory negligence was on the defendant, and as it can not be said from the evidence, as a matter of law, that plaintiff was guilty of such negligence, we conclude, as found by the verdict, that contributory negligence on the part of plaintiff was not shown.

3. Upon the question of the amount of·damages, the evidence shows that plaintiff was severely scalded on both legs, on one extending from the upper third of the thigh to the heel; that he suffered the most intense pain for over three months; that the burns did not permanently heal until the next December following the date of infliction; that the skin proper on the right leg and in patches on the left was destroyed; that in healing, the scars had contracted upon the blood vessels and the pressure interfered with the circulation of the blood, and would probably cause varicose veins and trouble in after life.

In view of these facts, which the evidence warranted the jury in finding, we can not say against the verdict that the damages assessed are excessive.

*Conclusions of Law.*—1. W. T. Booth, a witness for plaintiff as to the nature and character of his injuries, was, on cross-examination, asked if he was not the same W. T. Booth whom an indictment for perjury had been returned against in the District Court of Grayson County. Had there been no objection the witness would have given an affirmative answer. But the testimony sought to be drawn out by the question was objected to upon the grounds that it was immaterial and the witness could be impeached only by showing his general reputation for truth and veracity. The objection was sustained and the witness not permitted to answer. Then the defendant offered in evidence an indictment returned, about three years prior to the trial of this case, to the District Court of Grayson County charging the witness Booth with perjury. Its admission was objected to upon the same grounds that the answer to the question was, and the objection was likewise sustained.

It is insisted by appellant in its first and second assignments that the court erred in sustaining the objections to the testimony thus offered.

It is elementary that in impeaching the credit of a witness the examination must be confined to his general reputation, and not be permitted as to particular facts.

The grounds upon which this rule rests—that testimony from other witnesses of particular instances of misconduct is an improper mode of

discrediting a witness, because of the confusion of issues and waste of time that would be involved, and because of the unfair surprise of the witness, who can not know what variety of false charges may be specified and can not be prepared to expose their falsity—have no application where the discrediting fact is the conviction of a crime, because the proof, by the record of conviction, does not lead to confusion of issues, and does not operate upon the witness for unfair surprise. Nor does the general rule apply, for the reasons upon which it is founded do not exist, in bringing from the mouth of the witness himself, upon cross-examination, particular acts of *his own* conduct, affecting his character. But even here there is a limitation as to relevancy of the conduct sought to be proven on cross-examination to the character of the witness for truth; for not all misconduct indicates that a witness is such a character as may not speak the truth under oath. On principle, only such misconduct as imputes a lack of truthfulness or honesty should be inquired into on cross-examination, e. g., fraud, forgery, perjury, etc. Greenl. on Ev., 16 ed., sec. 461c. But does the fact that a witness has been indicted for an offense which, if he is guilty of, would show such moral turpitude as would affect his character for truth and honesty, without more, tend to impeach or discredit him as a witness? The fact that such indictment has been made, in our opinion, does not tend to show the commission of the offense charged, or conduct discrediting the witness. No presumption of guilt arises from it; on the contrary the presumption is that the accused is innocent until his guilt is established by legal and competent testimony. The mere fact that the witness has been indicted for an infamous offense is foreign to any issue, and if it be not evidence tending to impeach his character, its admission in evidence can subserve no end of justice nor any useful purpose.

The question and answer sought to be elicited by it could serve only to degrade and humiliate the witness. "A question which is alike degrading to answer or decline to answer, should never be put unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character under the forms of law, would contribute little to the development of truth and still less to the furtherance of justice. It would tend neither to elevate the dignity of our tribunals, nor to inspire a reverence for our systems of jurisprudence." Third Gt. West. T. Company v. Loomis, 32 N. Y., 140. One forfeits no rights by becoming a witness. Of all places in the world where one should be treated justly it is in a court of justice. And when called there as a witness he has the right to expect that he will be justly dealt with, and, unless the ends of justice require that his misdeeds should be exposed, when he has properly demeaned himself and spoken the truth on the witness stand, he should be allowed to go about his business without anything having been said or done that would humiliate or degrade him or lower his character in the estimation of the public. Trial courts

have the discretion to set limits to the cross-examination of a witness on matters of his conduct affecting his character, irrespective of the relevancy of such matters, and to forbid it whenever it seems to be unnecessary, profitless or undesirable (Third Gt. West. T. Co. v. Loomis, supra; Territory v. Chavez, 45 Pac. Rep., 1107), and unless such discretion has been abused its action on such an examination will not be reviewed. It is apparent to our minds that in the present case such discretion was not abused, but rightfully exercised in excluding the testimony involved in these assignments of error.

2. The testimony offered by appellant, by which it sought to prove by Hood that when he was in charge of one of its pumping stations at Navasota instructions were given him that pumpers at pumping stations should not permit boys or others to come upon such premises, and that such instructions were general and given for witness' guidance while in charge of any pumping station, the exclusion of which is the basis of the third assignment of error, in our opinion is immaterial to any issue so far as the merits of this case are concerned. Hood testified that no authority had been given him to invite anyone to come on the premises where appellee was injured, and that if plaintiff had ever been in the pumphouse with him before he got hurt, witness did not remember it. This testimony substantially established the fact that Hood had no authority to invite appellee to go into the pumping house or on or about the premises where it was maintained. Nothing more could have been shown by the testimony excluded. It is immaterial whether such instructions were given Hood or not, or whether he was authorized to invite persons on the premises. For he was placed by appellant in exclusive management and control of its pumping house, its appliances and appurtenant premises, and the rule is that when one places his property in the exclusive possession and control of another, the right to protect the possession from intruders and to prevent any interference with the property arises from the duty of the one placed in such possession to properly control and manage it. Galveston H. & S. A. Ry. Co v. Zantzinger, 93 Texas, 64. Had it been proven that Hood had specific orders from the company not to allow anyone to come on the premises, his disobedience of such orders in inviting and allowing appellee there would be no defense to this action. Missouri K. & T. Ry. Co. v. Rodgers, 89 Texas, 675; Cook v. Navigation Co., 76 Texas, 353. This also disposes of appellant's fourth assignment of error.

3. The fifth paragraph of the court's charge is as follows: "If you believe from the evidence that defendant's employe, E. M. Hood, invited and permitted plaintiff to go upon the premises upon which said pumphouse was located, and knowingly permitted him to remain thereon, and if you further believe that said pumphouse and premises were dangerous for persons of plaintiff's age, intelligence and experience; and if you believe that such fact, if it was a fact, was known to said Hood, or ought to have been known to him by the exercise of ordinary

care; and if you further believe that in so inviting him and permitting plaintiff upon said premises, if the said Hood did invite and permit him to be there, the said Hood was guilty of negligence, as that term has been heretofore defined; and if you further believe that said negligence, if any, was the proximate cause of plaintiff's injury, you will find for the plaintiff, and assess his damages as hereinafter directed, unless you find for defendant under other portions of this charge."

As we understand it this is an accurate enunciation of the law applicable to the case made by the pleadings and evidence and is not obnoxious to any of the objections urged against it by appellant's propositions asserted under the fifth assignment of error. Missouri K. & T. Ry. Co. v. Rogers, 89 Texas, 675; St. Louis S. W. Ry. Co. v. Abernathy, 28 Texas Civ. App., 613, 68 S. W. Rep., 539; San Antonio Water Co. v. White, 9 Texas Civ. App. 465, 44 S. W. Rep., 181; Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 289, 40 S. W. Rep., 531; Cook v. Navigation Co., 76 Texas, 353; Evansich v. Railway Co., 57 Texas, 128; Ollis v. Railway Co., 31 Texas Civ. App., 601, 73 S. W. Rep., 30; Thompson v. Railway Co., 11 Texas Civ. App., 307, 32 S. W. Rep., 191; Galveston H. & S. A. Ry. Co. v. Zantzinger, 93 Texas, 64; Rosenburg v. Durfree, 87 Cal., 545, 26 Pac. Rep., 793; Chicago M. & St. P. Ry. Co. v. Hoherty, 53 Ill. App., 282; Britt v. Eddy, 115 Mo., 596, 22 S. W. Rep., 488; Hestonville, etc., Ry. Co., v. Biddle, 16 Atl. Rep., 488.

4. So much of the sixth special instruction requested by appellant as is the law applicable to this case is embodied in the sixth paragraph of the court's general charge, and therefore the court did not err in refusing such special instruction.

5. The sixth paragraph of the charge simply requires the jury to find whether the evidence establishes the existence of a specific group of facts which, if true, would in law establish appellant's plea of contributory negligence, and instructs them that if they should find such group of facts established by the evidence to find for defendant. This method of presenting a defensive issue has been commended by the Supreme Court. Missouri K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Missouri K. & T. Ry. Co. v. Rodgers, 91 Texas, 58. In view of the opinions of the Supreme Court in these and other cases, the paragraph of the charge in question, instead of being regarded as erroneous, should be commended. The last clause of the paragraph in question, which is, "Or, if you believe from the evidence that his failure to use such care and observation to discover and avoid the danger, if you believe that he did fail to do so, contributed to his injury, then you will find for the defendant," clearly relieves it of the objection urged.

6. It is complained in the eleventh assignment of error that the court erred in defining contributory negligence as to plaintiff to be such negligence or failure on his part to exercise, for his own safety, such a degree of care as would have been reasonably expected of him,

taking into consideration his age, experience and intelligence at the time of the accident. The principle that the normal measure of the caution required from a lawful man must be fixed with regard to other men's normal powers of taking care of themselves, has no application to children. A child is deemed to think and act as a child, and it is only when he becomes a man that he is expected to put away childish things. And when one sees a child exposed to risk from one's action, proportionate care is required, and it is immaterial that the child would not be there but for the carelessness of some parent or guardian or servant. Hence it is settled by the overwhelming weight of authority that a child is held, so far as he is personally concerned. to the exercise of such degree of care and discretion as is reasonably to be expected from children of his age. Webb's Pollock on Torts, 565, 566; Shearm. & Redf. on Neg., sec. 73. The part of the charge complained of, while not literally, is in substantial compliance with these principles; and when it is considered that the evidence strongly tends to show that the plaintiff was a dull boy and might not on that account have had such discretion as is reasonably to be expected from a child of his age, we are of the opinion that the slight departure in the charge from the general rule of contributory negligence, as applicable to children, was not error, but was required by the particular facts in this case. In fact the rule is laid down by the Supreme Court of this State that to determine the question of liability for injury to a child it is proper to take into consideration his age, intelligence and ability to understand the character of the act performed and its consequences. Missouri K. & T. Ry. Co. v. Rodgers, 89 Texas, 675; Texas & P. Ry. Co. v. Phillips, 91 Texas, 281.

7. It is now the settled doctrine in this State that the burden of proving contributory negligence rests upon the defendant, and as the evidence shows that the hot water and steam which injured plaintiff was turned off from the engine through the pipe by defendant's servant, without exercising ordinary care for plaintiff's safety, it was not error for the court to give the jury, in its charge, the general rule as to the burden of proof.

8. Our conclusions of fact dispose of the remaining assignments of error adversely to appellant.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.