## THOMAS. v. OREGON SHORT LINE RAILROAD CO.

No. 2800.   Decided January 12, 1916.   (154 Pac. 777.)

1. RAILROADS—INJURIES TO PERSONS ON TRACKS—ACTIONS—INSTRUC-
TIONS.   In an action for injuries to a child injured by a railroad
engine at a point where the track was used by school children
and others generally as a footpath, there was evidence that
the injured child was standing with some other children and
some section men at the side of the track and started to run
across the track directly in front of the engine.   The 'court
charged that, if the jury found from the evidence that plaintiff
was not on or dangerously near the track, but was standing
sufficiently clear thereof and showing no disposition to go upon
the track or get dangerously near it, the operators of the train
would not be required, in the exercise of reasonable and ordi-
nary care, to anticipate that she would go upon the track, get
dangerously near, or attempt to cross it, but would be entitled
to proceed upon the assumption that she would remain where
she was.   *Held*, that this was not erroneous, as it did not tell
the jury that the train operators, regardless of the facts and
circumstances, had the right to assume that plaintiff would not
go dangerously near or attempt to cross the track, but was
predicated on assumed facts.[1]   (Page 401.)

2. NEGLIGENCE—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE — CHIL-
DREN.   In an action for injuries to a girl eight years old, it was
not error, in charging relative to contributory negligence, to
charge that, if she were above the standard of ordinary children
of her age in understanding, knowledge, and appreciation of the
circumstances, she would be held to the degree of care that
persons of her intelligence, knowledge, and experience would
ordinarily exercise under such circumstances and in view of
such knowledge.[2]   (Page 403.)

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CHILDREN.   In deter-
mining whether a child is guilty of contributory negligence, its
age, experience, and intelligence may be considered, and, if it
has had a greater experience or familiarity with or better
knowledge of instrumentalities and dangers involved, or has
greater capacity and intelligence than an ordinary child of its
age, this fact may be considered.   (Page 405.)

---

[1] Distinguishing *Jensen* v. *Railroad Co.*, 44 Utah 100, 138 Pac. 1185;
*Palmer* v. *Oregon S. L. R. Co.*, 34 Utah 466, 98 Pac. 689, 16 Ann. Cas.
229; *Kyne* v. *Southern Pacific Ry. Co.*, 41 Utah 368, 126 Pac. 311.

[2] *Christensen* v. *Railway*, 29 Utah 192, 80 Pac. 746; *Riley* v. *Rapid
Transit Co.*, 10 Utah 428, 37 Pac. 681.

4. TRIAL—INJURIES TO PERSONS ON TRACK—ACTIONS—EVIDENCE. In
an action for injuries to a child eight years old sustained while
crossing a railroad track, evidence as to her familiarity with
the railroad tracks and yards, the operation of trains and cars,
the danger therefrom, and that she was an especially bright
child, in connection with her appearance and manner in giving
her testimony, *held* to raise a question as to whether she was
above the standard of ordinary children of her age in under-
standing, knowledge, and appreciation of the circumstances,
and hence an instruction that, if she was, she would be held
to the degree of care that persons of her intelligence, knowl-
edge, and experience would ordinarily exercise under such cir-
cumstances and in view of such knowledge, was not inapplica-
ble.   (Page 405.)

McCARTY, J., dissenting.

Appeal from District Court, Third District, *Hon. F. C.
Loofbourow*, Judge.

Action by Pearl Thomas, an infant, by William Thomas,
guardian ad litem, against the Oregon Short Line Railroad
Company.

Judgment for defendant.   Plaintiff appeals.

AFFIRMED.

*Thos. Marioneaux* and *Willard Hanson* for appellant.

*Geo. H. Smith, J. V. Lyle* and *Paul Williams* for respond-
ent.

APPELLANT'S POINTS.

Plaintiff was not a trespasser.   The track had been used
as a passage-way for children and others who had occasion
to go to and from the Bonneville school, and in the vicinity
of the school for a great many years, and distinct trails
led to and from the track, and under the conditions that
existed the defendant owed plaintiff the same duty as though
the injury occurred at a public street crossing.   (See *Teakle*
v. *Ry.* 32 Utah 276, *Young* v. *Clark*, 16 Ut. 42, *Christensen*
v. *Ry.*, 39 Ut. 192, *Gesas* v. *Ry.*, 33 Ut. 156, *Corbett* v. *Ry.*, 25
Ut. 449, *Palmer* v. *Ry.*, 34 Utah 466.

The plaintiff was but a child of 8 years of age and as to such children it cannot be said, as a matter of law, that she was guilty of contributory negligence. The train, while possibly not moving at a rate of speed prohibited by law, had failed to give the warning and signals that the law provided should be given for the safety of the residents of the city, and such an unlawful act was neglect per se. (*Riley* v. *Rapid Transit*, 10 Ut. 428; *Wilkinson* v. *Ry.*, 34 Ut. 110; *Palmer* v. *Ry.*, 34 Ut. 466; 33 Cyc. 793-4.)

Defendant cannot excuse itself on the ground of impossibility to stop in time to avoid the injury, when its negligence made it impossible. (*Murrell* v. *Mo. Pac. Ry. Co.*, 79 S. W. 505; *Ry.* v. *Jackson*, 120 S. W. 158, *Ry. Co.* v. *Patchen*, 47 N. E. 368; *Ry. Co.* v. *Sanders*, 39 N. E. 481; *Ry. Co.* v. *McMarries, Adms.*, 108 S. W. 898. A child is only required to exercise that degree of care and discretion that is reasonably expected in children of the same age. (*Christensen* v. *O. S. L. Ry. Co.*, 29 Ut. 192; *Riley* v. *Rapid Transit Co.*, 10 Ut. 428; *Denver City Tramway Co.* v. *Nicholas*, 84 Pac. 813; *Smith* v. *Pittsburg & W. Ry. Co.*, 90 Fed. 783.)

## RESPONDENT'S POINTS.

The child thoroughly appreciated the danger of railroad tracks. She knew what they were for and what the particular danger was, that trains might come along at any time of the day or night in either direction, and several times stated that she knew it was dangerous to cross tracks without first looking or listening for approaching trains; and further stated that she usually did do so but forgot on this occasion. Her conduct was to be determined by her knowledge, capacity, understanding and appreciation of the danger. (*Cromeenes* v. *S. P., L. A. & S. L. R. R. Co.*, 37 Utah 475-7; *Gesas* v. *O. S. L. R. R. Co.*, 33 Utah 156; *Wendell* v. *N. Y. C. & H. R.*, 91 N. Y. 420; *Twist* v. *Winona & St. P. R. R.*, 39 Minn. 164; 12 Am. St. Rp. 626; *Egley et al.* v. *O. R. & N. Co.*, 2 Wash. 409; 26 Pac. 973; *Studer* v. *S. P. Co.*, 121 Cal. 400; 66 Am. St. 39; *Marryman* v. *Chicago, etc., R. R.*, 85 Iowa 634; 5 N. W. 545; *Krenzer* v. *Pittsburgh R. R.*, (Ind.) 43 N. E. 649; *Raden* v. *Ga. Rd. Co.*, 78 Ga. 47; *Masser* v. *Chi-*

*cago, etc., R. R.,* 68 Iowa 692; 27 N. W. 776; *Cent. R. R. Co.*
v. *Bonison,* 70 Ga. 207; *Powers* v. *Chicago, etc., R. R.,* 57
Minn. 322; 59 N. W. 307; *Tucker* v. *N. Y. Cent. & H. R. R.*
*R. Co.,* 124 N. Y. 308; *Gay* v. *Essex St. Ry. Co.,* 159 Mass.
238; 21 L. R. A. 448; *Wallace* v. *N. Y. etc. Rd.* 154 Mass. 236;
*Thompson* v. *Buffalo Rd. Co.,* 39 N. E. 709; *Penn. Rd. Co.* v.
*Lewis,* 79 Pa. St. 33.)

STRAUP, C. J.

This is an action to recover damages for personal injuries
alleged to have been suffered through the negligence of the
defendant. The accident occurred on one of the defendant's
tracks in the northern limits of Salt Lake City, several hun-
dred feet south of a public school building and in an inhabited
and well-settled portion of the city. A track on the east of
the school building ran to a quarry north and east of the
building. To the south the track led into another track run-
ning west of the building. The accident occurred a short
distance north of the junction of these tracks.' There were
also a number of tracks west of these. It was averred, and
evidence was given to support the averments, that for a long
time, with the knowledge and acquiescence of the defendant,
the track on which the injury occurred had been traveled
and used by school children in going to and from school and
by others generally as a foot path. The defendant, on the
quarry track, was operating an engine backwards drawing
cars from the quarry. The charged negligence is that the
defendant failed to give warning of the train's approach by
sounding the whistle and ringing the bell, failed to observe
a lookout, and operated the engine and cars in violation of
an ordinance requiring a constant ringing of bells of locomo-
tives in motion in inhabited portions of the city, and negli-
gently failed to have the engine under proper control and
to stop it and avoid the injury. The defendant denied the
charged negligence, and averred contributory negligence.

The plaintiff was eight years of age. She had just come
from a dismissal of school. At the place of the accident four
or five section men were at work. There is evidence to show
that the whistle on the engine was sounded and the bell rung

at a crossing near the school building, about 300 feet north of the place of the accident, but that the bell was not ringing at the time of the accident and had not been rung nor had the whistle been sounded for a distance of about 300 feet. As the train approached the plaintiff and other children were standing with or near the section men, 6 or 8 feet from the track. A switchman stood on the footboard of the engine and on the foremost part of it as it approached. When the train was but a few feet away, the plaintiff started to run across the track in front of the moving engine to go on the other side of the track and down the railroad yard to play with a little girl companion. The switchman, seeing her, reached for her just as she stumbled and fell forward. She cleared the track, except the toes of one foot, which were run over and so injured as to require amputation. The plaintiff testified:

"I had been to school that day. It was in the afternoon. I was going home from school, and there was a train on the other side of the track. I did not see the one coming. I was going to run down in the yard to play with Sara's little sister. I didn't see the train coming, so I went across the track, and then I slipped. I fell down, and the train ran over my toes. Then Mrs. Nelson came out and carried me in the house, and took off my shoes and stockings."

On cross-examination she testified:

"We started from school as soon as it was out. We went down the track on the right side. We did not walk between the rails. We walked to one side. I saw some men working along the track. I knew one of them. There were three or four other men. I did not know them. I saw a hand car off to one side of the track. I don't know much about tracks. I know there were a good many tracks there. Some of them were passenger tracks and some of them were freight tracks. The two nearest our house are passenger tracks; then there are the freight tracks; then the spur tracks off from the freight tracks. The men that were working were down towards the end of the spur track. I had passed the cattle guard when the accident happened. The men working there were just below the cattle guards. I knew that passenger

trains passed on these two tracks, and that freight trains passed both ways on the freight line. I also knew that trains ran up on this track that went past the school out into the gravel pit. I have seen trains go back and forth on these and other tracks when I have been going and coming from school. I knew that I had to keep out of the way of a train. I knew that if I got on the track in front of the train that I might get hurt. I knew of the dangers of the tracks. I knew that, if I got on the track in front of the train, it could not be stopped, and that I would get hurt if I stayed there. I knew a train could not be stopped as quick as I could stop walking. I knew that before crossing a track I would have to look out to see whether they were clear or not. I would make it a business to look across a track before crossing. I knew that if I did not look and listen for trains when I started to cross a track that I might get hurt. I have waited for trains to pass before I crossed the track. One can look up the track from Mrs. Nelson's and see a train above the Bonneville School. While I was talking to Henry (one of the workmen) the little Van Leuwen girl was with me. She was up by me. I was off to the side of the track. I did not see any one move away from the track while I was talking to Henry. I did not see them stop work. The men were using picks. I did not see them stop and step back. Up to the time that I started to cross the track I had been standing still. I did not see the train coming, and I did not know that it was coming. I have heard gravel trains come down, and heard the squeaking and screeching of the wheels. Sometimes the trains make a big noise. I did not hear that on that day. I had not seen the train coming. I was eight or nine feet from the track when I started to cross it. I started straight across. I did not decide to run across to get across before the train came. It was after I fell that I knew that the train was coming. The train did not strike me. I stumbled and fell. After I fell I could not get out of the way. It ran over me before I saw it. The bottom of my foot was up. I did not hear any one shout when I started to run. I did not notice that any one grabbed me and pulled me out from under the tender of the train. Mrs. Nelson was the first person who took hold

of me. The first I knew of the train was when the wheels ran over.''

Other witnesses also testified that as the train approached without warning the plaintiff was standing with other children and the workmen eight or nine feet from the track, and that she started to run across the track in front of the moving engine and stumbled and fell. The switchman on the running board testified:

''I was on the rear footboard, and, as we were backing down, that would be the most forward part of the equipment. I was on the right-hand corner. I was occupying that position from the time we left the gravel pit. I was keeping a lookout ahead, and also from that position I can signal to the engineer. After we came from the gravel pit, we stopped for the Bamberger crossing. We went on over the crossing, then went on slowly down the grade until we came to the Bonneville School, and we whistled for the crossing, then rang the bell, and that was about all that was done until the accident. I saw some section men and some children standing outside of the track about six or eight feet from the track. The track was about clear, and we came on down the grade. When we were about even with the section men, the little girl started across in front of the engine. She was within two feet of the corner of this footboard. Just as she got about in the center of the track she began to fall and stumble. She fell with her body the other side of the other rail, with one foot on the rail. She cleared the track, except for the one foot. When I saw her I hollered at her just as loud as I could. She paid no attention, but went right ahead. I figured to catch hold of her, but at the time she was in a falling position I could not reach her. I had to hold on with one hand, and make a reach with the other one. As soon as she fell I jumped right off, and took hold with this hand. The engine had gone the length of the tank, probably twenty feet, but I got hold of her before the side rods would strike her. When I got hold of her, I was right under the engineer, but the wheels struck her. * * * The children were in among the section men. They were playing there. I did not observe which way they were looking. The train was going slow. There was no movement of the

children or of the men until this girl ran. Nobody acted like he was going across the track. The children were standing right near this pole. * * * As soon as I saw her I thought she would get cut in two. My first thought was to grab her. I don't know what I said when I shouted, but I shouted loud. I did not have time to give any signal, and I did not try. I tried to get hold of her. The speed of the train was five or six miles an hour.''

The case was submitted to the jury, who rendered a verdict in favor of the defendant. The plaintiff ap-peals. She complains of this charge:

''You are instructed that, if you find from the evidence in this case that at the time and place of the accident in question the plaintiff was not on or dangerously near the track, but was standing sufficiently clear thereof and showing no disposition to go upon the track or get dangerously near it, the operators of the train in question would not be re-quired, in the exercise of reasonable and ordinary care, to an-ticipate that she would go upon the track, get dangerously near, or attempt to cross it, but would be entitled to proceed upon the assumption that she would remain where she was. And, if you find from the evidence that she did approach dan-gerously near to the track or attempt to cross the same after the train was so close to her that it could not be stopped in the exercise of reasonable and ordinary care, your verdict must be for the defendant, unless you find that some other act or omission of the defendant or its servants alleged in the complaint, operating independently of any negligent act of the plaintiff, was the cause of the accident.''

It is urged that it is in conflict with the cases of *Jensen* v. *Railroad Co.*, 44 Utah, 100, 138 Pac. 1185, and *Palmer* v. *O. S. L. R. Co.*, 34 Utah, 466, 98 Pac. 689, 16 Ann. Cas. 229, where we held that it generally was a question of fact, and not of law, as to what the servants of a railroad company, in charge of a train, might assume as to the conduct of a de-ceased or injured person in stepping away from or leaving a track on which the train approached, and that it is in conflict with the general rule (notes *Southern Ry. Co.* v. *Chatman*, 6

L. R. A. (N. S.) 283) that, when those in charge of a train see a child of tender years upon a track or dangerously near it, they, as matter of law, may not assume that it will get out of the way. We do not think the charge in conflict with these holdings. In view that the plaintiff was a child of tender years, the charge perhaps would have been better had the court charged that, if a prudent person, in the exercise of ordinary care, situated and surrounded as were the train operators in charge of the train in question, and knowing what they knew of the situation, and seeing what they saw or could have known or seen, would not have anticipated that the plaintiff, under all the circumstances, would go upon or dangerously near the track or attempt to cross it, then the train operators were not negligent in assuming that the child would not do that; but we think the charge substantially conveyed that thought. It is not, as was the request in the Jensen Case, a direction, regardless of the facts and circumstances of the case, that those in charge of the train might, as matter of law, assume one thing or another, or that a traveler on or dangerously near a track would leave it. The charge here is predicated on assumed facts. It is: If the jury, from the evidence, found that the plaintiff was not on or dangerously near the track, but was standing sufficiently clear thereof and showing no disposition to go upon the track or to get dangerously near it, then the operators of the train would not be required, in the exercise of ordinary care, to anticipate that she would go upon the track or get dangerously near it or attempt to cross it. We do not see anything wrong with that. The cases cited by the appellant (*Jensen* v. *Railroad Co., supra; Palmer* v. *Railroad Co., supra; Kyne* v. *Southern Pacific Ry. Co.,* 41 Utah, 368, 126 Pac. 311; *Terre Haute, etc., Traction Co.* v. *Maberry,* 52 Ind. App. 114, 100 N. E. 401; *Cleveland, C., C. & St. L. Ry. Co.* v. *Means* (Ind. App.) 104 N. E. 787; *Southern Ry. Co.* v. *Chatman,* 124 Ga. 1026, 53 S. E. 692; 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675; 33 Cyc. 802), in our judgment, do not make against this; for the charge, as heretofore observed, is not a direction to the jury that the train operators, regardless of the facts and circumstances of the case, had the right to assume that the

plaintiff would not go dangerously near or attempt to cross the track.

On contributory negligence the court gave this:

"In determining whether or not the plaintiff in this case was negligent, you are entitled to, and should, take into consideration her age, development, experience, intelligence, and knowledge and appreciation of the danger incident to being upon or crossing railroad tracks as shown by the evidence; and, if you should find therefrom that she did **2** know and appreciate such danger, she would be held to exercise that degree of care that a person of her knowlelge, experience, and understanding would ordinarily exercise under such circumstances. In other words, if she were above the standard of ordinary children of her age in understanding, knowledge, and appreciation of the circumstances, she would be held to the degree of care that persons of her intelligence, knowledge, and experience would ordinarily exercise under such circumstances and in view of such knowledge."

The point made is that the charge ought to have been that the plaintiff was only required to exercise that degree of care and discretion which a child of ordinary experience, intelligence, and knowledge of the same age would be expected to use under the same circumstances; but that the charge erroneously stated that, if the plaintiff was "above the standard of ordinary children of her age in understanding, knowledge, and perception of the circumstances, she would be held to the degree of care that persons of her intelligence, knowledge, and experience would ordinarily exercise under such circumstances and in view of such knowledge." It is urged that this is in conflict with the cases of *Christensen* v. *Railway,* 29 Utah, 192, 80 Pac. 746; *Riley* v. *Rapid Transit Co.,* 10 Utah, 428, 37 Pac. 681; *Denver City Tramway Co.* v. *Nicholas,* 35 Colo. 462, 84 Pac. 813; *Smith* v. *Pittsburg & W. Ry. Co.* (C. C.) 90 Fed. 783. In each of these cases the question before the court was as to whether the child, as matter of law, was conclusively guilty of contributory negligence. In each it was held that it was not; that the question was for the jury. With that in view the court, in the first case, observed that to

hold that the child was guilty of negligence required a holding that:

"It failed to exercise that due care for his own safety while in pursuit of his cow that would reasonably be expected of a boy of his age (and years), * * * intelligence, understanding, and experience, which the record shows was equal to, if not superior to, that of the average boy of his years: for it is well settled that a child is only required to exercise that degree of care and discretion as is reasonably expected from children of his own age. * * * As to whether the boy used that same degree of caution and prudence for his own safety as would be expected of children of his age, experience, and intelligence, under same or similar conditions was, under the circumstances of this case, a question for the jury."

In the second case the court used this language:

"It is a well-established rule that children are not chargeable with the same degree of care in protecting themselves as grown people, and the child in this case was only bound to use such care as a child of his age, experience, and intelligence might reasonably be expected to use for his own protection."

In the third:

"The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case."

In the fourth:

"While it is the duty of children to exercise ordinary care to avoid injury, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances."

We do not think the charge violative of the rule as announced by these cases. In 29 Cyc. 535, it is stated:

"The degree of care required (of children) has been variously stated as the care reasonably to be expected of a child of his age; age and discretion; maturity and capacity; youth and inexperience; mental and physical capacity; age and capacity; age and intelligence or intellectual capacity; age, experience, and intelligence; age, experience, and capacity; capacity and discretion; age, capacity, and intelligence; age, experience, and discretion; age and mental and physical development; age, intelligence, experience, and ability to comprehend danger; age, courage, intelligence, and ordinary prudence. It is said that there is no inflexible rule by which to determine the capacity of children for observing and avoiding danger,

but a child is bound to use the reason he possesses and exercise the
degree of care and caution of which he is capable."

In the case of *Gesas* v. *Railroad,* 33 Utah, 156, 93 Pac. 274,
13 L. R. A. (N. S.) 1074, we put the proposition thus:

"The degree of care required of a child must be graduated to its
age, capacity, and experience, and must be measured by what might
ordinarily be expected from a child of like age, capacity, and experi-
ence under similar conditions."

That, among other cases, is supported by the following:
*Twist* v. *Winona & St. Peter Ry. Co.,* 39 Minn. 164, 39 N. W.
402, 12 Am. St. Rep. 626; *Merryman* v. *Chicago, etc. Ry. Co.,*
85 Iowa, 634, 52 N. W. 545; *Cleveland, etc., Ry. Co.* v. *Miles,*
162 Ind. 646, 70 N. E. 985; *Illinois Central R. Co.* v. *Wilson,*
63 S. W. 608, 23 Ky. Law Rep. 684; *Klatt* v. *D. N. C. Foster
Lumber Co.,* 97 Wis. 641, 73 N. W. 563; *Kinnare* v. *C. & N.
W. Ry. Co.,* 114 Ill. App. 230; *Houston & T. C. R. Co.* v.
*Bulger,* 35 Tex. Civ. App. 478, 80 S. W. 557.

We think the charge in harmony with those views.

In determining whether a child is or is not guilty of con-
tributory negligence, we think it proper to consider its age,
experience, and intelligence.  If it has had a greater
experience or familiarity with, or has better knowledge    **3, 4**
of, instrumentalities and dangers involved, or has
greater capacity and intelligence, than an ordinary child of
its age, we see no good reason why such fact should not be
considered.  But it is claimed that nothing of that kind was
made to appear; and for that reason was the charge inap-
plicable.  It was made to appear that the child lived near
the tracks and railroad yards; that it frequently traveled
them in going to and from school; that it was familiar with
the tracks and yards and the operation of trains and cars
about them, and knew which were freight and which passen-
ger tracks; and that in attempting to cross or go upon tracks
it knew the necessity and duty of looking for approaching
cars and appreciated the danger of coming in contact with
moving cars.  Her father testified that "she was an especially
bright child, the teachers said, more than the average for her
age."  And then the child was before the jury and gave her
testimony.  From her appearance and manner in which she

gave her testimony and recalled and related facts the jury had an opportunity, to some extent at least, to judge of the child's intelligence and capacity. We think the charge was applicable and properly given. We therefore are of the opinion that the judgment ought to be, and it accordingly is, affirmed, with costs.

FRICK, J., concurs.

McCARTY, J. (dissenting).

While there is a difference in the phraseology of the instruction (No. 15) given in this case and that of the instruction requested in the *Jensen Case,* 44 Utah, 100, 138 Pac. 1185, yet the two instructions, as I read them, declare the same rule of law.

| Instruction No. 15 Given in This Case. | Instructed Requested in the Jensen Case. |
|---|---|
| "You are instructed that, if you find from the evidence in this case that at the time and place of the accident in question the plaintiff was not on or dangerously near the track, but was standing sufficiently clear thereof and showing no disposition to go upon the track or get dangerously near it, the operators of the train in question would not be required in the exercise of reasonable and ordinary care to anticipate that she would go upon the track, get dangerously near, or attempt to cross it, *but would be entitled to proceed upon the assumption that she would remain where she was. And, if you find from the evidence that she did approach dangerously near to the 'track or attempt to cross the same after the train was so close to her that it could not be stopped in the exercise of reasonable and ordinary care, your verdict must be* | "The engineer had a right to *assume that Clarence Jensen* was in possession of his senses and faculties, and that, *as a reasonable person, he would step out of the way of harm before the engine reached him,* and said engineer was under no duty to attempt to stop his train until it was otherwise apparent to him. If you should find from the evidence *that Clarence Jensen was walking down between the tracks* operated by the Western Pacific Railroad Company and that operated by the defendant, *and that suddenly, when the train of the defendant was within six, eight, or ten feet of him, he stepped in front of said train,* and that he was there run over and killed by said engine, *then you are instructed that the defendant is entitled to a verdict."* (Italics mine.) |

*for the defendant,* unless you find that some other act or omission of the defendant or its servants alleged in the' complaint, operating independently of any negligent act of the plaintiff, was the cause of the accident." (Italics mine.)

The doctrine declared in the *Jensen Case* is, in my judgment, a sound and wholesome one. The instruction (No. 15) given in this case, in view of the peculiar facts and circumstances, was equivalent to a directed verdict for the defendant. The conclusion arrived at in the prevailing opinion on this point, I think, is clearly at variance with, and antagonistic to, the rule announced in the *Jensen Case.*

I am therefore of the opinion that the cause should be reversed, with directions to the lower court to grant a new trial, and hence dissent.