## YELLOW CAB & BAGGAGE CO. v. SMITH et al.

### No. 12349.

Court of Civil Appeals of Texas. Fort Worth. June 7, 1930.

Rehearing Denied July 5, 1930.

Lightfoot, Robertson & Scurlock, of Fort Worth, for appellant.

Thompson & Barwise, of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted in the Ninety-Sixth district court of Tarrant county, Tex., on the 28th day of December, 1927, by May Smith, individually and as guardian of the person and estate of Leroy Smith, a minor. She was joined pro forma by her husband, Joseph H. Smith.

At the time the circumstances referred to took place, the defendant, a corporation, was engaged in the taxicab business in the city of Fort Worth, and in connection therewith, operated a storage garage at 1013–1017 Commerce street, in the city of Fort Worth. During the month of February, 1926, and for some time prior thereto, one Sid W. Richardson, who was living at the Texas Hotel in Fort Worth, was a customer of the defendant, and stored his car at the garage referred to above, for which the defendant charged a rate of approximately $12 per month. During this time the defendant maintained an employee, who stayed in the lobby of the Texas Hotel, to take orders for taxicabs and to attend and render general service to the defendant's customers who stored their cars in the defendant's garage.

About 11 p. m., on February 11, 1926, Sid W. Richardson drove by the defendant's garage on Commerce street in his automobile and requested an employee in charge to send some one over to the Texas Hotel to get his car, in order that it might be stored in the defendant's garage for the night. Thereupon the employee in charge directed John Livingston, a negro, and also an employee of the defendant, to go after the car. John Livingston either walked to the Texas Hotel or rode to that point with Sid W. Richardson. The car, which was a Pierce-Arrow sedan, was found by him near the south entrance of the hotel, headed west toward Main street, in the city of Fort Worth. He got in the car and drove west about half a block to Main street, where he turned south and drove two blocks to Tenth street, where he turned

cast and headed toward the Yellow Cab Company Garage on Commerce street.

The plaintiff Leroy Smith, at the time of the circumstances which are the subject-matter of this suit, was 11 years of age and had been a newsboy for about five years, selling papers upon the streets of Fort Worth. The boy had finished his work of selling newspapers for the evening and was standing on the southeast corner of the intersection of Tenth and Main streets, waiting for a street car to take him to his home. A valentine which the boy was holding was blown out of his hand by the wind to about half the distance across Tenth street. According to his testimony, he went out into the street, picked up the valentine, turned about face, and had taken about three steps back toward the sidewalk when the automobile driven by John Livingston struck him just as John Livingston had completed the turn from going south on Main street to going east on Tenth street. The force of the impact knocked the boy down, and, as described by the boy, knocked him "over and over." However, the car did not run over him. The negro, John Livingston, driving the car, claimed that the boy "appeared in front of my car," or that he "just jumped in front of the car like that." Both the thigh bones of Leroy Smith were fractured. However, the fractures were simple fractures, as distinguished from compound fractures or compound, comminuted fractures. The boy was taken to a hospital and given proper attention. Dr. Trigg was the doctor who performed the operation of setting his legs on February 17, 1926. The bone in the left leg slipped out of position; so it was necessary that a second operation be performed on February 26, 1926. The plaster cast was removed from the right leg on April 20, 1926, and the boy dismissed from the hospital about April 27, and went to his home. The plaster cast was removed from the boy's left leg about two weeks after he had been dismissed from the hospital.

The boy discarded his crutches about January, 1927. Both Drs. Trigg and Rhodes testified at the time of the trial that the boy appeared to be completely well. Dr. Trigg's testimony was based upon observing the boy walk about on the streets and in the courtroom. However, Dr. Rhodes made an examination of the boy in his office two or three months before the case was tried.

On June 19, 1926, Sid W. Richardson, who was represented by Messrs. Thompson & Barwise, made a settlement with the plaintiffs. As provided in the compromise agreement, Sid W. Richardson paid $1,050 to May Smith and her husband, Joseph H. Smith, and $700 to May Smith as the duly appointed guardian of the person and estate of Leroy Smith. The agreement was termed "a covenant not to sue," and provided that it should not be considered as a release of Sid W. Richardson and that it should not inure to the benefit of the Yellow Cab & Baggage Company. It also provided that the plaintiffs, the parties of the second part, would "pay to the said Sid W. Richardson the sum of $1,750 from and out of any moneys which may be collected from the Yellow Cab & Baggage Company, either by voluntary settlement of the claims of the parties of the second part, or by a full or partial satisfaction of any judgment which may be obtained against the Yellow Cab Company," with 6 per cent. interest thereon from the date of said judgment.

The plaintiffs filed a suit against the Yellow Cab & Baggage Company, alleging, of course, that the injuries sustained by Leroy Smith were the proximate result of the negligence on the part of John Livingston, the colored man who was driving the automobile, and alleged generally the facts set out above, with the exception of the facts regarding the settlement made by Sid W. Richardson. The defendant answered by a general denial, pleaded contributory negligence on the part of the boy Leroy Smith, and also pleaded the settlement made by Sid W. Richardson, alleging that such payment made by him, if not a complete settlement, was at least a settlement pro tanto to be credited on any verdict recovered by the plaintiffs against the defendant.

The only eyewitnesses who testified in regard to the circumstances and conduct of the parties at the time of the accident were Leroy Smith, the injured boy, John Livingston, the negro driving the automobile, and Reece Davis, a policeman. Leroy Smith testified as a witness for the plaintiff, and the other two as witnesses for the defendant. The defendant contended vigorously that the evidence failed to show any negligence on the part of the negro, John Livingston, who was driving the automobile, and that it did show that the boy, Leroy Smith, was guilty of contributory negligence in failing to keep a proper lookout for automobiles. However, on the trial, the case was submitted to the jury on special issues, and the jury returned a verdict to the effect that John Livingston, the driver of the automobile, was guilty of negligence, under the circumstances, in failing to sound a warning just prior to the time the boy was struck; that John Livingston failed to use ordinary care to keep a proper lookout for pedestrians, and that he was negligent in driving the automobile too fast; also that such negligence in each instance was the proximate cause of the accident. The jury also answered the issue of contributory negligence against the defendant. Finally, on the issue of damages, the jury found that Leroy Smith had suffered damage to the extent of $4,000, and that his mother and father had suffered damage to the extent of $1,000. Judgment was rendered in favor of the plain-

tiffs for these sums on the 12th day of July, 1929.

In submitting the case to the jury on special issues, the court defined "negligence," "ordinary care," "proximate cause," and unavoidable accident." Negligence was defined as "a failure to use ordinary care"; ordinary care as "that care which a person of ordinary prudence would exercise under the same or similar circumstances, and, as to a child, it is such as a child of such age and development would exercise."

The minor testified in part as follows:

"My name in Leroy Smith. I live here in Fort Worth, at 124 Holly. Mrs. May Smith is my mother. I am fourteen years old. In 1926 I was eleven years old. I was going to school then. I was in the second grade. I worked then, selling papers. I would sell papers all over town. I did not have a beat. My school let out at two fifteen. I didn't sell the home editions. I would play around the Star-Telegram until the financial came out at five o'clock or four thirty. The home edition came out about two thirty or three o'clock. I got those papers at the Star-Telegram building. When I went to sell them, I would have the Fair, L. G. Gilbert's, and a few other places, buildings up and down Main and Houston Streets, and at night I sold at the Majestic. I sold them at different buildings up and down Main and Houston Streets. * * *

"Before I was in this accident, I had been selling papers down there about five years. I got second place in line down there by reason of the length of time I was selling papers. We would be playing a game of dominoes or something and we would hear the papers come and we would run and line up for the papers."

In this condition of the evidence, appellant presented the following objection to the charge of the court, to wit:

"Defendant excepts to that portion of the main charge which defines ordinary care and especially that portion 'and as to a child, it is such as a child of such age and development would exercise', for the reason that the jury is not properly informed that they may consider the experience that the plaintiff, Leroy Smith, had had as a newsboy upon the streets of the City of Fort Worth and in observing traffic, and for the further reason that a boy without that experience, would not be expected to exercise the same degree of care as the plaintiff in this case; and the defendants say that the evidence in this case is wholly sufficient to support the objection and exception made in this respect. Hence, said definition is not full or appropriate in accordance with the facts in this case with respect to the experience of the plaintiff."

Appellant had pleaded contributory negligence on the part of the minor, which it was alleged was the proximate or contributing cause of the minor's injury, and the finding of the jury was against the appellant on this issue. We are of the opinion that the exceptions to the charge of the court were well taken.

In determining whether an adult charged therewith is guilty of negligence, it is always necessary to determine the care exercised by him. The care required to free him of the charge is that which a person of ordinary prudence would exercise *under the same or similar circumstances.* The circumstances, therefore, are an essential element of the definition of ordinary care, and an instruction embodying the definition in effect amounts to a direction to the triers of the facts to consider the circumstances. If this be true in the case of an adult, and we think this is not to be doubted, it must, for like reasons, be true in cases where it is a minor who is charged with negligence.

By reference to the court's definition of ordinary care, it will be seen that the first sentence is correct as applied to an adult. It, as to an adult, embodies all the necessary elements. But it is not made expressly so in the second sentence wherein the court undertakes to apply the definition to the case of a minor before the court. By the terms of the sentence, the jury's consideration of the circumstances may be construed as limited to the boy's "age and development." At least, considering the arrangement of the two sentences, the jury may have so interpreted it, whereas appellant was entitled to have the jury informed, not only that they might, but that they should, in determining the issue of the boy's contributory negligence, if any, consider not only his age and development, but also all other circumstances shown in evidence tending to show his experience or knowledge or familiarity, if any, with the conditions or situations similar to those involved in the case on trial.

In behalf of the appellee, it is contended that the knowledge and experience of the minor as indicated in his testimony, which we have quoted, is comprehended within the term "development," as used in the court's charge. While in its broadest sense this may be true, we do not think it is necessarily so. A boy, in form, in body, and in mind, may be perfectly developed for his age, and yet have but little or no knowledge or experience of or with the rules of the road, the extent or volume of traffic in a city, the regulations relating thereto, such as stop and go signals, left and right turns, rates of speed allowed, the frequency of reckless driving on the streets, etc. It is true, as appellee contends, that such circumstances are evidentiary only and not an ultimate fact to be proved, but they are circumstances, when shown, that are to be considered in determining the ultimate

fact, and the wording of the court's charge should be broad enough to so inform the jury.

In 45 Corpus Juris, pp. 1002 and 1003, it is said: "It is generally held that, although age is an important factor to be considered in determining whether a child is capable of exercising any care, it is not the only factor to be considered, and that whether a child has such capacity is to be determined in each case by considering not only his age, but also all other factors bearing upon his capacity, such as his intelligence, experience, discretion, previous training, maturity, alertness, and the nature of the danger encountered. Thus it has been held that a child may be guilty of contributory negligence, although at the time of his injury he was between six and seven years old, between five and six years old, and between four and five years old."

In the case of Birmingham, etc., Ry. Co. v. Mattison, 166 Ala. 602, 52 So. 49, 52, the Alabama Supreme Court said: "One child may understand and appreciate one danger and not another. Another child, of the same age as the first, may understand the danger the first does not, and be insensible to the danger of which the first was aware. A child raised in the city may be perfectly capable of understanding and avoiding the danger of street cars, railroads, and crowded streets, but insensible of the dangers of a mowing or threshing machine, a foot adz, or a scythe blade, etc.; while a child of the same age and average intelligence, raised on a farm, would fully understand and comprehend the dangers of the latter class, but be wholly unconscious or ignorant of those of the former. Some children at the age of 7 better understand the dangers of trains and cars than do others at 14. Therefore, the capacity, the intelligence, the knowledge, the experience, and discretion of the child are always evidentiary circumstances.

In M., K. & T. Ry. v. Rodgers, 89 Tex. 680, 36 S. W. 243, 245, our Supreme Court said: "Whether or not the plaintiff was of immature years, and so wanting in intelligence that he could not appreciate the danger of getting upon the car, is a question of fact to be found by the jury. * * * If, however, the jury should find that the plaintiff had such a degree of intelligence that he could and should have appreciated the danger of his act, then the burden would be upon him to prove that the person or persons who invited or permitted him to ride upon the car had authority so to do."

■ In the case of T. & P. Ry. Co. v. Phillips, 91 Tex. 278, 42 S. W. 852, 853, our Supreme Court announced the rule that: "To determine the question of liability for injury. to a child, it is proper to take into consideration his age, intelligence, and ability to understand the character of the act performed and its consequences."

In the case of H. & T. C. Ry. Co. v. Bulger, 35 Tex. Civ. App. 478, 80 S. W. 557, 560, the evidence developed that the plaintiff, who was 13 years of age, was a dull boy and might not on that account have had such discretion as is reasonable to expect from a child of his age. The railway company appealed from a judgment in favor of the plaintiff, assigning error to the court's charge, defining contributory negligence as to the plaintiff "to be such negligence or failure on his part to exercise, for his own safety, such a degree of care as would have been reasonably expected of him, taking into consideration his age, experience, and intelligence at the time of the accident." The Court of Civil Appeals held that the charge was not only proper, "but was required by the particular facts in this case. In fact, the rule is laid down by the Supreme Court of this state that, to determine the question of liability for injury to a child, it is proper to take into consideration his age, intelligence, and ability to understand the character of the act performed and its consequences." A writ of error was also refused in this case.

■ It is no answer to the error complained of to say that the defendant failed to prepare and request the submission of a proper charge. As held in the case of G., C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183: "In the instance of a defective or erroneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by article 1971 take the place of special charges and render it unnecessary that the latter be tendered. It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge."

The rule is again stated by the Commission of Appeals in the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, 571. The decision of the Commission of Appeals in that case was approved by the Supreme Court in the following language: "We approve the holding of the Commission of Appeals on the question discussed in its opinion."

In Freeman v. Garcia, 56 Tex. Civ. App. 638, 121 S. W. 886, 887, it is said, quoting from the headnotes, that: "Where a minor possesses such a degree of intelligence as to appreciate the danger involved in his act, he is chargeable with contributory negligence as any other person."

We conclude, as already indicated, that the court erred in overruling appellant's exceptions to the charge we have been discussing.

The following exception to plaintiffs' peti-

tion should also have been sustained, to wit: "The defendant excepts to said petition because it shows on its face that the plaintiff, May Smith, brings the suit individually to recover for the loss of services of her minor son, Leroy Smith, and for the doctor and hospital bills incurred in his behalf, although, as shown by the petition, she has a husband, and although she is not entitled under the law to recover individually for the loss of services of her minor son, Leroy Smith, and for the doctor and hospital bills incurred in his behalf."

In her petition, plaintiff May Smith sues to recover the loss of the services of her minor son, Leroy Smith, and for doctor and hospital expenses incurred in his behalf in her individual capacity. The petition discloses that she has a husband who is joined "pro forma." It seems well settled that damages for such services and expenses constitute community property for which the husband alone may sue. See Ezell v. Dodson, 60 Tex. 331; T. O. Ry. v. Burnett, 61 Tex. 638; Middlebrook v. Zapp, 73 Tex. 29, 10 S. W. 732; G., H. & S. A. Ry. v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78; Hillsboro Cotton Mills v. King, 51 Tex. Civ. App. 518, 112 S. W. 132; G., H. & S. A. Ry. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264; San Antonio St. Ry. v. Mechler (Tex. Civ. App.) 29 S. W. 202.

The case of Hillsboro Cotton Mills Co. v. King, 51 Tex. Civ. App. 518, 112 S. W. 132, was one in which the wife brought suit for the loss and earnings of her minor son, as in the present case. The defendant pleaded that the plaintiff was a married woman and therefore was not authorized to bring suit. The court said: "Under the law, if plaintiff was a married woman, she could not maintain the suit in her own name. The damages sought to be recovered would constitute community estate of herself and husband. The statute gives the husband, during marriage, the sole management of the community property, and he alone is ordinarily the only person authorized to sue for it. Speer on Married Women, #287; Murphy v. Coffey, 33 Tex. 508; Middlebrook v. Zapp, 73 Tex. 29, 10 S. W. 732; Loper v. Western Union Tel. Co., 70 Tex. 689, 8 S. W. 600; Vaughn v. Railway, 34 Tex. Civ. App. 445, 79 S. W. 345. There was no pleading by plaintiff that she had been abandoned by her husband Joyce and left without means of support, or any allegation bringing her within the exception to the general rule above announced."

The term "pro forma" is defined in Webster's Unabridged Dictionary as "for the sake of form; as a matter of form." In 32 Cyc., p. 956, pro forma is defined "as a matter of form." In Black's Law Dictionary (2d Ed.) it is said that: "The formal parties are those who have no interest in the controversy between the immediate litigants. * * * Nominal parties are those who are joined as parties or defendants, not those that have any real interest in the subject matter or because any relief is demanded as against them, but merely because the technical rules of pleading require their presence in the record."

Appellees suggest that the exceptions do not raise the question of misjoinder of either the husband or the wife, or of the wife being an improper or unnecessary party, but raises by inference only the question of nonjoinder of the husband, which is waived by failure to brief, and further that an exception based on the ground that the wife was an improper and unnecessary party presents no prejudicial error. The exceptions to the petition, we think, go beyond a mere objection of a misjoinder or nonjoinder of parties. They go rather to the very right of the wife to recover for the items specified. The husband alone, under the authorities cited, may recover for the alleged services and expenses, and nothing on the face of the petition, the husband not being a party in interest, shows that he would be precluded from a subsequent suit for the recovery of the same damages.

As appears in our statement of the case, Sid W. Richardson, the owner of the automobile, paid to May Smith and her husband $1,750 for the benefit of the minor upon a claim that he was a cotort-feasor with the Yellow Cab & Baggage Company, and appellant in several paragraphs of its amended answer pleaded this payment by Richardson with the prayer that it be deducted from any judgment that might be rendered against it. The agreement effected between Richardson and Mr. and Mrs. Smith was termed "a covenant not to sue," and contained a provision that Mr. and Mrs. Smith would pay to Sid W. Richardson the sum of $1,750 from and out of any moneys which may be collected from the Yellow Cab & Baggage Company either by voluntary settlement of the claims of the parties or by full or partial satisfaction of any judgment which may be obtained against the Yellow Cab & Baggage Company. And error is assigned to the judgment rendered in this case on the ground that the $1,750 referred to was not deducted.

We find in the briefs considerable discussion of the authorities relating to the liability of joint tort-feasors, but we think that we need not go into that subject at this time, for the reason: First, that the jury, in answer to special issue inquiring whether the negro driver was an employee of Richardson or of the appellant company, answered that the driver was an employee of the "defendant Yellow Cab & Baggage Company." No specific complaint is made of this finding, from which we must conclude that Richardson was not a joint tort-feasor. Second, under a proper charge and the evidence, we cannot say that on another trial the jury may not find that the

minor was guilty of contributory negligence which proximately resulted in his injury. If so, the appellees would not be entitled to recover anything.

We conclude that, for the error in the court's charge, the judgment below must be reversed and the cause remanded for another trial.